Richard K. JACKSON, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: Aug. 15, 1991.
Decided: Oct. 2, 1991.
Motion for Clarification of Opinion and/or
Rehearing En Banc Nov. 7, 1991.

Lawrence F. Hartnett, Hockessin, for appellant.

Richard E. Fairbanks, Jr., Chief of Appeals Div., Dept. of Justice, Wilmington, for appellee.

Before MOORE, WALSH and HOLLAND, JJ.

WALSH, Justice:

This is an appeal from a criminal trial in the Superior Court. Richard Jackson ("Jackson") was convicted by a jury of two counts of Unlawful Sexual Intercourse in the First Degree and one count each of Possession of a Deadly Weapon During the Commission of a Felony, Unlawful Imprisonment in the First Degree and Assault in the Third Degree. He was sentenced to thirty-eight years in prison.

In this appeal, Jackson asserts numerous claims of error, none of which he raised at trial. He claims that each constitutes plain error. We find each of his contentions to be without merit and affirm the Superior Court.

I

At trial, the State presented evidence of the following events. The victim [1] had been attending night school on Wednesday, October 9, 1989. After class, she went with her teacher, Veronica Clark, to help Mrs. Clark start her car. After starting the car, both the victim and Mrs. Clark drove to the Clark residence for a social visit. James Clark, Veronica Clark's husband, drove up to the house with two passengers, one of whom was Jackson.

Mrs. Clark, Mr. Clark, and the victim decided to accompany Jackson to his home to play cards. On the way to Jackson's residence, they stopped at a liquor store. While at Jackson's residence, the four played cards, ate food, and drank beer and liquor. According to the victim, she did not flirt with Jackson and was not "on a date" at any time that evening.

At 11:30 p.m., the Clarks prepared to leave. The victim intended to leave with them, however, Jackson asked her to stay and speak with him for a few minutes. She agreed. Jackson and the victim talked for approximately five minutes after which time the victim again prepared to leave. At this point, Jackson began to cry. The victim then stayed to comfort him. After Jackson appeared to be calm, the victim again got up intending to leave. Jackson grabbed her and pulled her down, tearing her jacket in the process. The victim was now struggling to leave the house. However, Jackson subsequently grabbed her by the hair, threw her to the couch, and started his sexual assault by biting her breasts. The victim continued to resist Jackson's repeated assaults. However, he slapped her in the face, pulled out a knife, and threatened to kill her. At this point, the victim stopped resisting.

Jackson allowed the victim to go to the bathroom. After she was finished in the bathroom, Jackson took her to the bedroom. After leaving the bedroom for a minute, Jackson returned and forcibly engaged in sexual intercourse with the victim over the course of the next thirty minutes. After Jackson finished assaulting her sexually, the victim left the bedroom and ran out of the house. She drove home and immediately called Mrs. Clark and related what happened. The next day, the victim went to the hospital where she reported the incident to the police.

At trial, Jackson's version of the facts differed significantly from that of the victim. Jackson testified that, after the Clarks left, he and the victim began danc-

---

1. As discussed below, appellant argues that the trial court committed plain error by allowing the State to refer to the complainant as the "victim" even though the only issue in the case was whether a crime had actually been commit-

ted. Since the defendant now stands convicted of committing various crimes, he no longer enjoys the presumption of innocence and it is not inappropriate for this Court to refer to the complainant as the victim.

ing. After dancing, he went to the bathroom. When he came out, Jackson testified that he found the victim sitting on the edge of his bed. He went over to her, she kissed him, he responded and they ended up engaging in sexual intercourse. Jackson also testified that he did not threaten the victim with a knife.

## II

In this Court, Jackson claims the trial court committed plain error in failing to properly state an element of the offense of Unlawful Sexual Intercourse in the First Degree in its charge to the jury, in allowing guilty verdicts for both the Unlawful Sexual Intercourse and Weapons charge when there was no evidence to support either, and in allowing the repeated use of the word "victim" by the State when referring to the complaining witness.

As previously noted, none of the claims of error asserted in this appeal were raised at trial.[2] Thus, their presentation here is permitted only under a plain error standard.

This Court, in the exercise of its appellate authority, will generally decline to review any contention not raised below and not presented to the trial court for decision. Supreme Court Rule 8; *Jenkins v. State*, Del.Supr., 305 A.2d 610 (1973). Thus, the failure to make a contemporaneous objection generally constitutes waiver of the right to raise the claim on appeal. *Michael v. State*, Del.Supr., 529 A.2d 752, 762 (1987). However, Rule 103 of the Delaware Rules of Evidence allows the appellate court to take notice of "plain errors affecting substantial rights" of the parties on appeal, even though the error was not brought to the attention of the trial court. Del.R.Ev. 103(d).

█ Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process. *Wainwright v. State*, Del.Supr., 504 A.2d 1096, 1100 (1986). Furthermore, the doctrine of plain error is

limited to material defects which are apparent on the face of the record, which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice. *Id.* Claims of error implicating basic constitutional rights of a defendant have been accorded review by this Court notwithstanding their non-assertion at trial. *See, e.g., Deputy v. State*, Del.Supr., 500 A.2d 581 (1985).

█ Jackson claims that the convictions of Unlawful Sexual Intercourse in the First Degree must be reversed because the trial court failed to state properly an element of the offense in its charge to the jury. Jackson alleges that this omission gives rise to plain error. Jackson was charged with two counts of Unlawful Sexual Intercourse in the First Degree for intentionally engaging in sexual intercourse without the victim's consent "which constitutes Unlawful Sexual Intercourse in the Third Degree and during the course of the crime the defendant displayed what appeared to be a deadly weapon, to wit: a buck knife." Under Delaware law, when a defendant "In the course of committing unlawful sexual intercourse in the third degree ... displayed what appeared to be a deadly weapon or a dangerous instrument" he is guilty of first degree unlawful sexual intercourse. 11 *Del.C.* § 775(a)(3).

The trial judge repeatedly told the jury that the difference between the greater and lesser degree of the sex charge was the aggravating fact of displaying a deadly weapon. The judge stated "so the basic difference between unlawful sexual intercourse in the third degree and unlawful sexual intercourse in the first degree is, that for the first degree, you must also find that a deadly weapon or dangerous weapon was displayed."

While the trial judge did not use the exact statutory language when instructing the jury, this does not give rise to plain error. If jury instructions correctly state the law, and do not engender jury confusion, then a verdict rendered under the

---

**2.** Jackson's present counsel did not represent    him at trial.

instruction will not be reversed for plain error. *Probst v. State*, Del.Supr., 547 A.2d 114, 119 (1988). The trial court's instruction correctly stated Delaware law and did not omit an element of the offense. Accordingly, we reject Jackson's claim that the jury was not properly instructed.

■ Jackson's second contention on appeal is that the trial court committed plain error in allowing a guilty verdict on the Unlawful Sexual Intercourse in the First Degree charge. Jackson claims that there is insufficient evidence to show that he displayed a deadly weapon "in the course of committing" the rape. As previously noted, the display of a deadly weapon, in the course of committing a rape, is a necessary element in a finding of guilty of unlawful sexual intercourse in the first degree. 11 *Del.C.* § 775(a)(3).

"[W]here a defendant urges that the evidence is insufficient to support a guilty verdict 'the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecutor, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt.'" *Davis v. State*, Del. Supr., 453 A.2d 802, 803 (1982) (quoting *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979)). There is clearly sufficient evidence in this record to support the jury verdict. The victim testified that she was induced to submit to Jackson's sexual assault when he displayed the knife and that, while the assault proceeded, he had continuous access to the knife. Furthermore, there was independent physical evidence suggesting that some of the victim's hair had been pulled out forcibly, thus bolstering her allegation of a violent, non-consensual assault. There was ample evidence for the jury to conclude that Jackson did in fact use a knife thus satisfying the requirement that all elements of Unlawful Sexual Intercourse in the First Degree be established. We find no plain error and reject this claim.

■ Next we consider the defendant's contention that the trial court committed plain error when allowing a guilty verdict on the charge of Possession of a Deadly Weapon During the Commission of a Felony. Using the standard set forth in *Davis*, we must decide if all essential elements of the crime were proved. 453 A.2d at 803. The evidence shows that Jackson overcame the victim's resistance to his sexual advances by displaying a knife and threatening to kill her. This evidence supports a weapons conviction. Having used the knife to overcome the victim's resistance, in order to rape her, Jackson could properly be found guilty of Possession of a Deadly Weapon During the Commission of a Felony. We find no plain error.

■ Jackson's final contention is that the trial court committed plain and prejudicial error by allowing the prosecutor to refer to the complaining witness as "the victim." Jackson contends that the use of the word "victim" compromised the fact finding role of the jury. He argues that since consent was his sole defense, reference to a "victim" assumes that a crime had been committed and the sexual acts were non-consensual. Thus, he argues any reference to the complaining witness as "the victim" conveys to the jury a conclusion of guilt.

■ The term "victim" is used appropriately during trial when there is no doubt that a crime was committed and simply the identity of the perpetrator is in issue. We agree with defendant that the word "victim" should not be used in a case where the commission of a crime is in dispute. However, when the word "victim" was used by the prosecutor, there was no contemporaneous objection by the defendant. The failure to make a contemporaneous objection generally constitutes waiver of the right to raise the claim on appeal. Supreme Court Rule 8; *Michael v. State*, 529 A.2d at 762.

Given Jackson's failure to object below, he must establish plain error. All uses of the word "victim" by the State occurred during the direct examination of a police officer and an F.B.I. hair expert. The trial court, when it allowed the prosecutor to use the word "victim," did not commit plain error because the term "victim," to law enforcement officers, is a term of art syn-

onymous with "complaining witness." Moreover, the term "victim" is also used in the indictment in this case as it is routinely in criminal charges which are read to the jury. Although the term should be avoided in the questioning of witnesses in situations where consent is an issue, its use in this case, without objection, does not constitute plain error.

The judgment of the Superior Court is AFFIRMED.

Before CHRISTIE, C.J., HORSEY, MOORE, WALSH and HOLLAND, JJ. (constituting the Court en banc).

### MOTION FOR CLARIFICATION OF OPINION AND/OR REHEARING EN BANC

■ Although completely successful on the merits of this appeal, the State has moved for clarification of the principal opinion, and/or a rehearing *en banc*, asserting that our disapproval of the use of the term "victim" in Jackson's trial results in a "banning" of the use of the word "victim." The State's position reflects an overreactive misreading of that portion of the opinion.

As the principal opinion makes clear, Jackson's claim of error was directed to permitting the prosecutor to refer to the complaining witness as "the victim" (p. 23). The opinion does not state, nor does it imply, that the use of the term "victim" by witnesses, as a term of art or in common parlance, is a basis for objection. The Court's criticism was directed to a prosecutor's repeated use of the term in a case where consent was the sole defense, and the principal issue one of credibility, to suggest to the jury, that a crime necessarily had been committed. In this case, if the defense of consent were accepted by the jury, no crime would have been proven and the complaining witness would not be deemed a victim. In such cases it is incompatible with the presumption of innocence for the prosecutor to refer to the complaining witness as the "victim," just as it is to refer to the defendant as a "criminal." *Commonwealth v. Johnson*, 516 Pa. 527, 533 A.2d 994 (1987). In each instance, the use of a particular term assumes the commission of a crime. If there is no dispute that a crime has, in fact, occurred, there is no harm in referring to the existence of a victim. In a narrow range of cases, such as this, such use is clearly unwarranted. It is improper for a prosecutor to assume as a given, or to suggest to the jury, the existence of that which is in dispute. It is a practice to be avoided, but, as the opinion emphasizes, in the absence of an objection it does not constitute plain error. The motion for rehearing *en banc* is DENIED.