IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　Appellant,<br><br>　v.<br><br>PATRICK WILLIAM C. TURPIN,<br><br>　　　　　　Respondent. | No. 82865-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — Patrick Turpin was convicted by a jury of assault in the second degree and criminal trespass in the second degree after he assaulted his neighbor, Jean Guerin. Turpin testified at trial that he did not do it. Turpin contends that his trial counsel was ineffective for failing to timely disclose a witness list. He also challenges references to Guerin as a "victim" during trial, and asserts that the prosecutor committed misconduct during closing arguments. The prosecutor did, without objection, misstate the law once during rebuttal but it was not so flagrant and ill-intentioned that it was incurable. Also, the State concedes the trial court did not intend to impose the supervision fees reflected on the judgment and sentence, and a scrivener's error created an inaccurate length of his sentence on the warrant of commitment. We remand for the trial court to correct the inadvertent errors, but otherwise affirm.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

At 2:56 p.m. on September 2, 2019, Guerin called 911 to report that his neighbor, Turpin was on his property unlawfully.  Guerin explained to the operator that Turpin had previously "been trespassed" from the property and Guerin had been instructed to call law enforcement if he observed Turpin on the property again.  Guerin reported that Turpin was wearing a "white shirt with blue jeans pants."  The call ended at 2:58 p.m.

Guerin told dispatchers that he would attempt to take a video while awaiting law enforcement.  Turpin had ducked behind the bushes and walked around the property and behind Guerin.  Guerin turned to use his cell phone camera to take a video of Turpin on his property and saw Turpin running at him.  Guerin captured only a "millisecond" of video before attempting to put his phone in his pocket as Turpin "was rushing at [him]."

Turpin then reached Guerin and hit him in the head three times and pushed him down to the ground while continuing to strike.  During the attack Guerin put his hand up and Turpin broke Guerin's thumb.  While on the ground, Guerin used his feet to defer more strikes.  Turpin stated "is that all you got?" before Guerin was able to get up and run away.  Guerin could not find his phone as he got up and ran to a neighboring home, asking the occupant to call 911.  Guerin was "covered in blood" when he approached the neighbor's home.

Whatcom County Sheriff's detective Troy Slayton responded to the scene at 3:06 p.m.  Upon arrival, Slayton observed Guerin "covered in blood" and standing in the driveway of the neighbor's home.  Slayton observed that the blood was "still wet" and was very fresh.  Slayton took photos of Guerin's injuries before medics began treating

him. Guerin identified Turpin as his attacker. Guerin took Slayton to the location on his property where the assault occurred. There, Slayton discovered a piece of plywood on the ground with blood droplets on it and found Guerin's phone in the same area. Guerin showed Slayton the video of Turpin on his phone. The timestamp on the video was 2:59 p.m., minutes before Slayton was dispatched.

When Slayton contacted Turpin at his home later that night, Turpin wore a white t-shirt and blue jeans, clothes that appeared similar to what he wore in the video captured by Guerin. Slayton did not observe blood on Turpin's clothing or injuries on Turpin's hands. Slayton issued a citation for misdemeanor assault in the fourth degree but did not take Turpin into custody.

Police later learned that Guerin received treatment at a local hospital for extensive injuries, including a fractured thumb that may need surgery. Turpin was subsequently charged by information with one count of assault in the second degree and one count of criminal trespass in the second degree. The case proceeded to trial in June 2021.

During motions in limine, Turpin moved to prohibit the State from referring to Guerin as a "victim," arguing that it amounted to improper opinion testimony. The trial court denied the motion.

It became apparent to the parties during the motions that defense had not filed with the court nor notified the State of its witness list.[1] Defense counsel provided the court and the State a copy of the defense witness list that he thought had been

---

[1] We note that at trial the State was represented by two prosecutors and Turpin was represented by two defense attorneys. We see no need to identify the specific prosecutor when referring to the "State" or "prosecutor," or identifying the specific defense counsel and referring to "defense" or "defense counsel."

previously filed.[2] The list apparently contained a summary of the witnesses' anticipated testimony. Defense planned to call three witnesses. The State objected and moved to exclude the witnesses because of the late disclosure. One of the witnesses, Gurmeet Dhaliwal, would testify that he had observed Turpin and Guerin in a verbal argument on a nearby temple property around 2 p.m. Because the State could interview Dhaliwal prior to his testifying, the trial court allowed defense to call that witness.

Defense offered that the other two witnesses would testify that they observed Turpin directly after he "left the area to go to work" and "can testify to whether or not he had blood spatter or busted up knuckles." The State responded that it did not believe the witnesses could make such observations. The trial court excluded the two witnesses the court, itself, described as "two non, work witnesses" who "saw Mr. Turpin at a time later than the events alleged in the case."

At trial, Turpin testified that he saw he was being videotaped by Guerin and jumped onto the temple property to confront Guerin. Turpin asserted that he never touched Guerin and the argument ended when Turpin walked away. He testified that the interaction with Guerin occurred around the time he was returning home with his two sons.

Additional facts will be discussed in the relevant sections below.

The jury convicted Turpin on both counts. Turpin was subsequently sentenced to 15 months' confinement, 18 months' community custody supervision, and ordered to pay non-discretionary fees.

Turpin appeals.

---

[2] The record does not include the defense witness list that the parties referred to in court.

4

DISCUSSION

Ineffective Assistance

Turpin first argues that his defense counsel provided ineffective assistance for failing to timely submit a list of trial witnesses as required, resulting in the exclusion of two of his three planned trial witnesses.

Both the United States and Washington state constitutions guarantee a defendant's right to effective assistance of counsel. State v. Estes, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). In order to prevail, Turpin must establish that his counsel's performance was both deficient and resulted in prejudice. State v. Grier, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011); Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). If either prong of the test is absent, we need not inquire further. State v. Johnson, 180 Wn. App. 92, 105-06, 320 P.3d 197 (2014) (citing State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996)).

Prejudice occurs when there is a reasonable probability that "but for counsel's deficient performance, the outcome of the proceedings would have been different." Estes, 188 Wn.2d at 457 (quoting State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). A reasonable probability is a probability sufficient to undermine the factfinder's confidence in the outcome. Id. (citing Strickland v. Washington, 466 U.S. at 687.

We need not analyze whether defense counsel was deficient[3] for not timely submitting a defense witness list because Turpin was not prejudiced by the exclusion of the two witnesses who "would have testified they saw Turpin shortly after the alleged

---

[3] Performance is deficient if it falls "below an objective standard of reasonableness based on consideration of all the circumstances." State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

assault and did not observe any blood on him or injuries to his hands." Although Turpin acknowledges that detective Slayton did testify he saw no blood or injuries on Turpin later that night, he argues the "excluded defense witnesses would have provided much more contemporaneous observations of Turpin." This argument is not supported by the record. Defense counsel argued that the witnesses saw Turpin "directly after he left the area." The State and the trial court both had a copy of the defense witness list presented during motions in limine that apparently summarized the witnesses' anticipated testimony. With this information, the State questioned whether the witnesses could even make such observations and the court described their offered testimony as seeing Turpin "a time later than the events alleged." Defense counsel did not dispute this by offering any more details as to where, how and when the witnesses observed Turpin.

Notably, Slayton testified that when he contacted Turpin later that night on the day of the assault, Turpin appeared to wear the same type of clothing, a white t-shirt and jeans, depicted in the earlier video. Slayton testified that he did not observe any blood or injuries on Turpin. Based on this record, it appears that the testimony from the excluded defense witnesses was nothing more than cumulative evidence. Under ER 403, a court may exclude relevant evidence if "its probative value is substantially outweighed . . . by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Turpin has failed to establish a reasonable probability that the outcome of the trial would have been different but for defense counsel's deficient performance.

Because Turpin fails to show that he was prejudiced by his counsel's deficient performance, we hold that his trial counsel was not ineffective.

### "Victim"

Turpin submitted a motion in limine asking the court to prohibit "any reference to the complaining witness as the 'victim,'" arguing that the term amounted to an improper opinion of the witness' credibility and was improper opinion testimony on the defendant's guilt. The trial court denied the motion, reasoning that "there is enough" and that the jury will receive sufficient instruction as to what they can rely on in reaching a verdict.

On review, this court "will not disturb a trial court's rulings on a motion in limine . . . absent an abuse of the court's discretion." State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995) (citing Washburn v. Beatt Equip. Co., 120 Wn.2d 246, 283, 840 P.2d 860 (1992)). "Discretion is abused when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons." State v. Blackwell, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993).

Turpin asserts that because the defense theory of the case was that Turpin did not commit the assault against Guerin, the prosecutor was improperly opining on whether Turpin was guilty of the crime charged. Turpin largely relies on Jackson v. State, 600 A.2d 21 (Del. 1991), from the Delaware Supreme Court, as well as several other non-binding out of state cases. In Jackson, the defense theory of the case was that the charged instances of unlawful sexual intercourse were actually consensual, meaning no crime was committed. Id. at 24. Jackson appealed the trial court's decision to allow the prosecutor to refer to the complaining witness as a "victim," arguing that the

7

reference "assumes that a crime had been committed" and improperly "conveys to the jury a conclusion of guilt." Id. The Delaware court noted "we agree with defendant that the word 'victim' should not be used in a case where the commission of a crime is in dispute." Id.[4]

Jackson is easily distinguishable from the instant case, however. At the time of its ruling, the trial court was aware that Turpin had been charged with assaulting Guerin in the second degree. To prove assault in the second degree, the court was aware that the State would have to prove that Turpin recklessly inflicted substantial bodily harm on Guerin. The State had earlier explained to the court during motions in limine that Guerin's injuries included a broken or fractured finger joint area and staples in his head that were photographed. In its argument to support its motion, Turpin argued without providing any context, that referring to Guerin as a victim was an improper opinion on his credibility. Turpin did not dispute that Guerin suffered injuries. In other words, at the time the court made its ruling, it was aware that evidence would be introduced that Guerin suffered severe injuries. Thus, it was reasonable for the court to view the central issue in the case as not whether Guerin was a victim of an attack, but whether the State could prove that Turpin was the attacker. Even in Jackson, the Delaware court acknowledged that "[t]he term 'victim' is used appropriately during trial when there is no doubt that a crime was committed and simply the identity of the perpetrator is in issue." Id.

---

[4] The Delaware court declined to find plain error where the defense failed to object to use of the term at trial.

8

Under these facts, the trial court did not abuse its discretion in denying Turpin's motion to prohibit use of the term "victim" at trial.[5]

### Prosecutorial Misconduct

Prosecutors have "'wide latitude in making arguments to the jury and prosecutors are allowed to draw reasonable inferences from the evidence.'" State v. Fisher, 165 Wn.2d 727, 747, 202 P.3d 937 (2009) (quoting State v. Gregory, 158 Wn.2d 759, 147 P.3d 1201 (2006), overruled in part on other grounds by State v. W.R., 181 Wn.2d 757, 336 P.3d 1134 (2014)). A prosecutor "commits misconduct by misstating the law." State v. Allen, 182 Wn.2d 364, 373, 341 P.3d 286 (2015). To prevail on a claim of prosecutorial misconduct, a defendant must show that "in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial." In re Pers. Restraint of Glasmann, 175 Wn.2d at 696, 704, 286 P.3d 673 (2012).

Once a defendant establishes that a prosecutor's statements are improper, we determine whether the defendant was prejudiced. If the defendant objected at trial, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. State v. Emery, 174 Wn.2d 741,

---

[5] At oral argument, Turpin maintained that requesting the court to prohibit the use of the term "victim" is a common defense motion and trial courts usually respond by directing parties to refer to witnesses by their names, but if a witness inadvertently slips and uses the term "victim" that would not be a basis for a mistrial. Wash. Court of Appeals oral argument, *State v. Turpin*, No. 82865-7-I (Mar. 9, 2023), at 5 min., 19 sec. through 5 min., 33 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://www.tvw.org/watch/?clientID=9375922947&eventID=2023031236. Here, the trial court denied Turpin's motion and said, "I'm going to allow the State's witnesses to characterize individuals by the title that they have given them." We note that, while there was no abuse of discretion here, referring to witnesses by their names, absent a relevant reason to do so otherwise, aligns with best practices.

760, 278 P.3d 653, 664 (2012). Where a defendant fails to object, we apply a heightened prejudice standard, requiring the defendant to show that the prosecutor's misconduct was "so flagrant and illintentioned that [a jury] instruction would not have cured the [resulting] prejudice." State v. Loughbom, 196 Wn.2d 64, 70, 470 P.3d 499 (2020) (quoting State v. Walker, 182 Wn.2d 463, 477, 341 P.3d 976 (2015)). If the defendant is unable to meet this heightened prejudice standard, he is deemed to have waived any error. Emery, 174 Wn.2d at 760-61. (citing State v. Stenson, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997)). Essentially, a defendant who did not object at trial must show the improper conduct resulted in "incurable" prejudice. State v. Zamora, 199 Wn.2d 698, 709, 512 P.3d 512 (2022).

We review the prosecutor's conduct and whether prejudice resulted from it "by examining that conduct in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.'" State v. Monday, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (internal quotation marks omitted) (quoting State v. McKenzie, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

A. "Constrained to the Evidence"

Turpin first contends that the prosecutor committed misconduct by misstating the law on reasonable doubt where he twice asserted in rebuttal that the jury was "constrained to the evidence." Turpin did not object to either, but asserts on appeal that this was improper because reasonable doubt "may arise from the evidence or lack of evidence" and that the jury was permitted to consider the lack of evidence.

However, viewed in the context of the total arguments, we conclude that the prosecutor's statements were not improper. First, during Guerin's testimony, he testified that the time stamp on the cell phone shows that the video was taken at 2:59 p.m. A photo of the cell phone showing the video's time stamp also shows that the video was taken at 2:59 p.m. During the cross examination of Guerin, the defense did not ask any questions about the time stamp of the video. The defense similarly asked no questions about whether Guerin modified the video in any way.

In closing, Turpin argued that the jury could not be sure that the time stamp on the cell phone video was the time the video was taken, rather than the time a video was modified and saved, stating

> And they are making this point of this video is that it has a 3:59 [6] timestamp. Okay. It's a video that now lasts a millisecond. What happens on your computer when you edit and save a video? It shows the time that the video was modified and saved. It does not show the time that it took place. So we don't know when that video was taken. They would like you to believe that it was taken at 3:59. However, Mr. Guerin is also asking you believe he's videotaping someone who [sic] coming toward him going to assault him but said nothing and he gets a millisecond of it, and right before this assault was supposed to occur he tried to put his phone in his pocket.

In rebuttal, the prosecutor responded to the argument, stating

> The Defense gets up here and says we only have pieces of evidence or we don't know what that evidence is but, well, we do know when this was, not by time but by today. This video was shown to police, this photograph was taken by the police 2:59 that day, not some other day, not some other time. You heard no evidence and there was no questioning that this video was somehow altered in any way. Mr. Guerin wasn't asked that. Did you alter the video? He came up here and testified. The Defense had an opportunity to question him. He was never asked that question. You are constrained to the evidence, to the questions that were asked. That is what you're to decide the case on.

---

[6] It appears defense counsel misspoke, stating "3:59" instead "2:59."

Later, the prosecutor argued that the jury was "constrained to the evidence" regarding the location of the bloody plywood and Guerin's phone on Guerin's property. Guerin testified that he saw Turpin on Guerin's property and that Guerin was standing on his own property when Turpin ran up and assaulted him. Guerin explained that the video of Turpin shows a fence dividing Guerin's property from the property owned by the temple next door. Guerin testified that the video shows Turpin on Guerin's property, approximately 40 feet inside of the fenced boundary. Additionally, in his initial call to 911, Guerin stated that he observed Turpin on Guerin's property and "we have a lot of reports from him continuing to trespassing [sic]." Guerin testified that he dropped his phone during the assault and was unable to find it before running to find help. Guerin also identified the location of the assault on a map of the property marked as a demonstrative aid. Detective Slayton testified that he drove Guerin back to Guerin's home and located the bloody plywood and cell phone on the property where the assault occurred. On cross examination, defense counsel elicited from Slayton that he relied on Guerin's assertion to determine who the property belonged to and did not consult other records.

Turpin did not testify that he was unaware of the property line, only that he was not on Guerin's property at the time of the assault. Turpin testified that he was concerned after seeing Guerin record him with a "camcorder" so Turpin crossed over to the temple's property to confront Guerin at the fence line.

In closing, the defense argued

The only evidence that this argument took place on Mr. Guerin's property is that Mr. Guerin says so. The only evidence that he's out there, had seen a realtor or is waiting for it is that he hands a business card to Detective Slayton. Detective Slayton said he never followed up on the

business card and that the only reason he knew possibly where the property line was Mr. Guerin said so.

In response to the defense's argument, the State argued

We know the Defendant knowingly entered and remained on the premise of another person. You've heard no evidence that the parcel where the blood was found, where the phone was found, you've heard no other evidence this was not Mr. Guerin's property. That's important too because you're constrained to the evidence. The Defendant new [sic] that the entry was unlawful. That's where you look to the 911 call, that's where you look to Mr. Guerin's statement its, that's where you note that even in the Defendant's version of events he crosses to the southern property and walks across. He doesn't cross over.

In addition, the trial court instructed the jury

Your decision as jurors must be made solely upon the evidence presented during these proceedings. The evidence that you are to consider during your deliberations consists of testimony that you have heard from witnesses, stipulations, and the exhibits that I have admitted during trial. If evidence was not admitted or was stricken from the record, then you are not to consider it in reaching your verdict.

The trial court also instructed the jury that

The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and exhibits.

In context, the prosecutor was responding to the defense closing arguments and pointing out the evidence that supported the State's position and the fact that evidence was not challenged. In context, the prosecutor argued that the jury was to consider the evidence presented and not to consider the lawyer's arguments as evidence, just as the trial court instructed.

B. *Lack of Defense Evidence*

Turpin next argues that the prosecutor misstated the law in rebuttal by stating "the fact that the defense doesn't have an explanation for something that happened is

13

not evidence." Turpin also challenges the prosecutor's argument that "[b]ecause something can't be explained by the Defense is not evidence. The evidence is what was put before you that establishes the elements of the crime." Turpin argues that these two statements shifted the burden to the defense. Viewed in context, we disagree.

In closing, the defense argued that

Now the state wants to make a big deal about time. I think time is important in some ways. So we know that there is the trespass call at 2:56 and then the dispatch on the second time at 3:06. We don't know if this, these alleged injuries occurred before that first call. We just don't know.

In response to the defense argument that no one knows how or when Guerin was injured, the prosecutor correctly stated the law and burden, stating

This case, it's the State's burden to prove this case and then the Defense attempts to present evidence to rebut the evidence that we put up. And the state put on evidence that demonstrated to you a clear timeline of when the assault occurred and a substantial amount of injuries that were suffered as a result of the assault. And the fact that the Defense doesn't have an explanation is for something that happened is not evidence.

The court overruled a defense objection that the State misstated the burden of proof. The trial court "direct[ed] the jury to the jury instructions for the instructions on the law." The prosecutor continued,

That is not the evidence. Because something can't be explained by the Defense is not evidence. The evidence is what was put before you that establishes the elements of the crime.

The prosecutor's statements did not shift the burden and, though inartfully, correctly reflected the court's instructions. The trial court instructed the jury that

14

> The State is the plaintiff and has the burden of proving each element of the crime beyond a reasonable doubt. The Defendant has no burden of proving that a reasonable doubt exists.

The court also instructed the jury that

> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence.

Viewed in context, we conclude the prosecutor's challenged statements were not improper.

## C. "Find Him Innocent"

Turpin next argues that the prosecutor misstated the law in telling the jury that "although the Defendant is presumed innocent, you must find that there is a reasonable doubt if you find him innocent." We agree with Turpin.

In this particular statement, the prosecutor improperly transferred the State's burden to something the jury was required to articulate in order to find the defendant "innocent." The State bears the burden of proving its case beyond a reasonable doubt, and the defendant bears no burden. Emery, 174 Wn.2d at 760. The jury's role is to weigh the evidence and determine whether the State has met its burden, not to determine whether a defendant is innocent of the crimes charged. State v. Crossguns, 199 Wn.2d 282, 297, 595 P.3d 529 (2022). "[T]he law does not require that a reason be given for a juror's doubt." State v. Kalebaugh, 183 Wn.2d 578, 585, 355 P.3d 253 (2015). "A jury need do nothing to find a defendant not guilty." Crossguns, 199 Wn.2d at 298 (citing Emery, 174 Wn.2d at 759-60).

The defense did not object to the challenged statement. As a result, Turpin must show that the misstatement was "so flagrant and ill intentioned" it could not be cured by

instruction. Loughbom, 196 Wn.2d at 70 (quoting Walker, 182 Wn.2d at 477)). Under this heightened standard, the inquiry is "whether the defendant received a fair trial in light of the prejudice caused by the violation of existing prosecutorial standards and whether that prejudice could have been cured with a timely objection." Id. at 74-75 (quoting Walker, 182 Wn.2d at 478). We conduct this assessment in the context of the total argument. Id. at 75. The Washington Supreme Court has observed that "we have only reversed convictions based on flagrant and ill intentioned misconduct 'in a narrow set of cases where we were concerned about the jury drawing improper inferences from the evidence.'" Id. at 74 (quoting In re Pers. Restraint of Phelps, 190 Wn.2d 155, 170, 410 P.3d 1142 (2018)).

The prosecutor only made this misstatement once during his rebuttal argument. At the beginning of the rebuttal argument, the prosecutor reminded the jury that "the law is contained in the instructions. You must disregard any remarks, statements or arguments not supported by the evidence of the law." The jury was also properly instructed on the correct standard by the trial court during jury instructions. Jurors are presumed to follow the court's instructions. Kalebaugh, 183 Wn.2d at 586.

After explaining the elements of the offenses charged, the trial court instructed the jury,

> If you find from the evidence that each of those elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

> On the other hand, if after weighing all of the evidence you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of guilty.

Additionally, the prosecutor and defense had correctly stated multiple times that the jury must find the Defendant "guilty" or "not guilty." At no other time did the State suggest the jury had to determine if the defendant was innocent. The State's rebuttal argument focused on the evidence it introduced that supported the elements it was required to prove beyond a reasonable doubt. At the end of rebuttal, the prosecutor reminded the jury that the "evidence is what was put before you that establishes the elements of the crime."

Turpin has not shown that the singular improper statement was so "flagrant and ill-intentioned" that an instruction could not have cured the resulting prejudice. Thus, we deem the error waived.

*D. Victim Impact Statement*

Turpin next asserts that the prosecutor argued facts not in evidence by referring to statements from Guerin's victim impact statement that he claimed not to remember during cross examination by the defense. However, the information the prosecution discussed in rebuttal was testified to during the re-direct examination of Guerin by the prosecutor.

The topic first came up during defense's cross examination of Guerin in the following exchange.

Q. Mr. Guerin, you stated earlier that you were satisfied with law enforcement's reactions to past calls?

A. I said they did the best they could.

Q. Okay. And more recently have you written a victim impact statement?

A. When Mr. Turpin was going to enter a guilty plea I did fill out a victim impact statement.

17

Q. In that statement did you say that you had, no longer had faith in the system and that after years of harassment they were allowed to, he was allowed to continue to harass you. Did you make that statement?

. . .

A. I filled out a victim impact statement and said the truth of what was happening.

Q. Did you say that your faith in the system had been shaken and that in spite of years of history of harassment, he was allowed to continue to harass you?

A I was, I'm disappointed that he was never really arrested. Getting a ticket for this kind of damage to someone was ridiculous.

Q. And did you, the statement that I just said, did you write that in your victim impact statement?

A. I don't know if I turned my victim impact statement in to you. I thought that was private.

Q. Did you write – that's not the question. Did you write that in the victim impact statement?

A. I don't remember what I wrote in my victim impact statement.

. . .

Q. It is a yes or no question. Did you write that in your victim impact statement?

A. That was a couple months ago. I really don't remember what I put in it.

Q. It's a yes or no question?

A. I don't remember.

The prosecutor then followed up with several questions about the statement on redirect,

Q. When you wrote your victim impact statement was that to tell the court how this case has impacted you?

A.    Basically, yes.

Q.    Okay.  And you answered questions, a bunch of questions on the impact statement in regard to things that were asked of you?

A.    I believe so.

Q.    Okay.  And so one of the things that you communicated to or wanted to communicate to the court is that this has had an impact on you, you've been harassed by the defendant, correct?

A.    Yes.

Q.    Okay.  And you didn't explain whether or not that harassment happened before or after that incident, correct?

      Yes or no?

A.    I did not, yes.

On rebuttal, the prosecutor argued that

The defense talked to Mr. Guerin, they talked a little bit about the fact that he had drafted a statement that he would anticipate that he would give to the Court when he was talking about how this case has effected [sic] him.  This is a 2019 case, he talked about being harassed for 1.5 years.

Defense objected arguing that the state could not discuss the contents of the statement because Guerin initially stated he could not remember what was in it.  The trial court overruled the objection.

Although at one point Guerin stated he did not remember what he wrote, he never denied being harassed and subsequently testified to it on redirect.  We conclude that the prosecutor's challenged argument in rebuttal was based on facts in evidence.

E.  "Victim"

Turpin lastly presents for the second time his argument that it was error to allow the State to refer to Guerin as a "victim," now fashioned as a prosecutorial misconduct claim.  Turpin argues that by calling Guerin a "victim," the prosecutor indicated his

19

"personal belief that Guerin was credible, which is misconduct." The record does not support this assertion.

It is improper for a prosecuting attorney to express a personal opinion that a defendant is guilty or that a witness is credible. McKenzie, 157 Wn.2d at 53-54 (citing State v. Armstrong, 37 Wn.2d 51, 54-55, 79 P. 490 (1905)). To be considered expression of a personal view, it must be "clear and unmistakable that counsel is not arguing an inference from the evidence, but is expressing a personal opinion." Id.

As explained supra, the trial court did not abuse its discretion in denying Turpin's motion to prohibit referring to Guerin as a "victim." It was undisputed that Guerin suffered multiple injuries and was covered in blood. Turpin simply denied that he is the one who attacked Guerin. Moreover, we note that Turpin's own attorney asked Guerin in cross examination if he recalled "writing a victim-impact statement," which he confirmed that he did. Defense counsel repeatedly referred to the "victim-impact statement" in questioning. Referring to Guerin as a victim under these facts does not equate to the prosecutor expressing his personal belief as to Guerin's credibility. We conclude that the prosecutor's reference to Guerin as a victim was not improper.

### Cumulative Error

Turpin argues that the combined effect of the alleged errors warrants reversal under the cumulative error doctrine. "Under the cumulative error doctrine, a defendant may be entitled to a new trial when cumulative errors produce a trial that is fundamentally unfair." Emery, 174 Wn.2d at 766. One error does not support application of the cumulative error doctrine.

## Supervision Fees

Turpin next challenges the imposition of supervision fees as a term of community custody. As part of his sentence, Turpin was ordered to serve 18 months of community custody following confinement. The judgment and sentence indicate that Turpin shall "pay supervision fees as determined by DOC." However, at the sentencing hearing the trial court stated it would only "assess the nondiscretionary fines and fees in the case." It further stated that it would "assess just the victim fund assessment in the case, $500."

It is procedural error to impose a discretionary fee where a trial court had otherwise agreed to waive such fees. State v. Bowman, 198 Wn.2d 609, 629, 498 P.3d 478 (2021). The State concedes that the imposition of this discretionary fee in the judgment and sentence was error.

## Warrant of Commitment

Turpin finally argues that there is a clerical error on the warrant of commitment signed by the trial court. Both the report of proceedings and judgment and sentence reflect that the trial court imposed a term of 15 months' confinement on Turpin after sentencing. However, the warrant of commitment states that Turpin was sentenced to 17 months' confinement. The State concedes this error.

## CONCLUSION

We remand for the trial court to strike supervision fees and correct the warrant of confinement. We otherwise affirm.

Coburn, J.

WE CONCUR:

Hazelrigg, ACJ

Dwyer, J.

21