# IN THE COURT OF APPEALS OF IOWA

—————————

No. 25-0273
Filed February 25, 2026

—————————

**State of Iowa,**
Plaintiff–Appellee,

v.

**Martinez Angelo Brimmer,**
Defendant–Appellant.

—————————

Appeal from the Iowa District Court for Dubuque County,
The Honorable Robert Richter, Judge.

—————————

**AFFIRMED**

—————————

Pamela Wingert of Wingert Law Office, Spirit Lake, attorney for appellant.

Brenna Bird, Attorney General, and Aaron Rogers, Assistant Attorney
General, attorneys for appellee.

—————————

Considered without oral argument
by Tabor, C.J., Sandy, J., and Mullins, S.J.
Opinion by Sandy, J.

**SANDY, Judge.**

A jury convicted Martinez Angelo Brimmer of acting as an accessory after the fact. Brimmer appeals his conviction, arguing: (1) the State did not present sufficient evidence to prove his guilt; and (2) the district court abused its discretion by denying his motion for a new trial. We affirm.

## BACKGROUND FACTS AND PROCEEDINGS

In the early morning of May 28, 2023, Brimmer was driving through downtown Dubuque in his red Chevrolet Corvette. Sitting in his passenger seat was Michael Rogers. At the same time, Cory Jones was standing by West 15th Street near Central Avenue working on his motorcycle. Leading Brimmer's Corvette was a black Jeep Grand Cherokee filled with three other men.

The Jeep and the Corvette sped past Jones two times. While speeding past Jones the second time, Jones threw a bottle at the Jeep, shattering the vehicle's windshield. Rogers, along with the three men in the Jeep, exited their respective vehicles and ran toward Jones. When Rogers exited the Corvette, Brimmer stayed in the car and drove around the block. The group ran toward and attacked Jones, beating him and stabbing him eleven times. Jones escaped in a truck, which was owned and driven by another man, and he ultimately survived the attack.

Shortly after the attack, Brimmer picked up Rogers in his Corvette. Captured on nearby doorbell camera footage introduced at trial, Rogers loudly yelled "I fucked him up" as he ran toward Brimmer's Corvette. Also captured on doorbell camera footage admitted at trial, Rogers told Brimmer "I just fucked him up, son" as he entered the Corvette. Brimmer then drove himself and Rogers to a nearby gas station a few blocks away from the scene

of the attack. After a brief stop, Brimmer drove himself and Rogers to the business Brimmer owned, a hookah establishment called the "Sage Room," meeting up with the men in the Jeep.

Police arrived at the Sage Room after using traffic cameras to track both the Corvette and the Jeep from the scene of the attack to the Sage Room. Based on descriptions of clothing from witnesses of the attack and officers reviewing traffic footage, the police spoke with Rogers and Brimmer, but the two were free to leave. Brimmer's Corvette was seized by warrant. A man named Lorenzo Eggleston was arrested with Jones's blood on his clothes and a knife in his sweatshirt.

The State charged Brimmer with acting as an accessory after the fact. Prior to trial, Brimmer moved in limine to prevent the State from referring to Jones as a "victim" at trial. The State resisted, and the district court granted Brimmer's motion in limine. The district court ordered the State to instruct its witnesses not to refer to Jones as a "victim" while testifying. At trial the State called Officer Joseph Conley of the Dubuque Police Department as its witness. Officer Conley, however, was not instructed by the State as to the motion in limine and did refer to Jones as "the victim" two times during his testimony.

Brimmer objected and moved for a mistrial. The State resisted, and the district court denied Brimmer's motion. The district court issued a limiting instruction to the jury to disregard the sections of Officer Conley's testimony that referred to Jones as a victim. The jury convicted Jones of acting as an accessory after the fact.

# STANDARD OF REVIEW

We review sufficiency of the evidence claims for corrections of errors at law. *State v. Folkers*, 941 N.W.2d 337, 338 (Iowa 2020). A jury verdict is binding on appeal "if the verdict is supported by substantial evidence." *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* "In determining whether the jury's verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *Id.* (cleaned up).

We review challenges to the district court's denial of a motion for mistrial for abuse of discretion. *State v. Brown*, 5 N.W.3d 611, 614–15 (Iowa 2024).

# ANALYSIS

## A. Sufficiency of the Evidence.

The district court instructed the jury that it could convict Brimmer of the accessory charge if the State proved the following elements:

On or about the 28th day of May, 2023:

1. The crime of Willful Injury and/or the crime of Participating in a Riot was committed.

2. The Defendant knew one or both crimes had been committed and Michael Rogers had committed it.

3. The Defendant harbored, aided or concealed Michael Rogers.

4. This was done with the intent to prevent arrest.

*See* Iowa Code § 703.3 (2023). The jury instructions defined "intent" to mean "not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind."

Brimmer argues the State presented no evidence that he knew Rogers had committed a crime when he gave him a ride. He also argues the State presented no evidence that Brimmer intended to help Rogers avoid arrest. Our focus, then, is on the evidence supporting the jury's conclusion that Brimmer had knowledge that Rogers had committed a crime when he gave him a ride and took him to his business, and that Brimmer intended to help Rogers avoid arrest. In viewing all available evidence in the light most favorable to the State and making all legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence, we conclude a reasonable jury could have convicted Brimmer. *See Crawford*, 972 N.W.2d at 202.

Based on the evidence presented at trial, reasonable jurors could have concluded that Brimmer knew Rogers committed the crime of willful injury or the crime of participating in a riot when giving him a ride to the gas station or to the Sage Room. Jones testified at trial that Rogers exited Brimmer's Corvette and joined the others from the Jeep, attacking him. Brimmer drove around the block and picked Rogers up after the group attacked Jones. A video from a nearby doorbell camera that was admitted at trial captured Rogers fleeing the scene of the attack, yelling "I fucked him up. I fucked him up." That doorbell camera footage also captured Rogers exclaiming "I just fucked him up, son" as he entered Brimmer's Corvette.

A reasonable jury could have inferred that Brimmer had knowledge of either crime based on seeing Rogers and the Jeep group chase Jones, or hearing the exclamation from Rogers that he "just fucked him up, son." A

reasonable jury also could have inferred that Brimmer harbored, aided, or concealed Rogers with intent to prevent his arrest. At trial, Officer Dieujuste of the Dubuque Police Department testified that he and the department used traffic cameras to track Brimmer's Corvette and the Jeep Grand Cherokee from the scene of the attack to the Sage Room.

Brimmer argues that this circumstantial evidence merely raises suspicion. However, "[j]uries must necessarily make inferences when finding facts based on circumstantial evidence." *State v. Ernst*, 954 N.W.2d 50, 59 (Iowa 2021). It would be a legitimate inference for the jury to conclude that Brimmer was assisting Rogers from the beginning when he drove around the block and picked Rogers up near the scene of the attack. It would also be a reasonable inference for the jury to conclude that Brimmer then drove Rogers to the business he owned to evade arrest.

Brimmer argues there is no evidence that he intended to help Rogers avoid arrest, exemplified by the fact that no one changed out of their clothes after the attack. Brimmer also asserts he only drove a short distance to the Sage Room from where the group attacked Jones and that he parked his red Corvette right out front, demonstrating no attempt to hide. Brimmer contends that he could not have intended to help Rogers evade arrest because if he did, he would have been doing a bad job of hiding him.

However, the jury was free to infer that Brimmer intended to prevent Roger's arrest based on the evidence that Brimmer very likely knew Rogers committed the predicate crimes based on his proximity when the attacks occurred, hearing Rogers' exclamations after the attack, and the fact he drove Rogers to the gas station and to the Sage Room anyway. *See State v. Lacey*, 968 N.W.2d 792, 803 (Iowa 2021) (noting a fact finder faced with conflicting

stories must credit some evidence while rejecting other evidence). Sufficient supports the jury's conviction of Brimmer as an accessory after the fact.

## B. Motion for Mistrial.

Brimmer argues that the curative instruction the district court issued was insufficient, and the prosecution's witness calling a witness a "victim" was prosecutorial error.

District courts receive "considerable discretion in ruling upon motions for mistrial" since trial judges are present throughout trial and in a better position than appellate courts to gauge the effect of the matter in question on the jury. *State v. Brown*, 5 N.W.3d 611, 615 (Iowa 2024) (citation omitted). A district court's "quick action in striking the improper response and cautioning the jury to disregard it, coupled, when necessary, with some type of general cautionary instruction, will prevent any prejudice." *State v. Wade*, 467 N.W.2d 283, 285 (Iowa 1991) (citation omitted). A defendant who asserts these actions were insufficient bears the heavy burden of proving a clear abuse of discretion on the part of the trial court. *Id.*

The district court issued the following curative instruction to the jury after denying Brimmer's motion for a mistrial:

> Ladies and gentlemen of the jury, you have just heard this witness refer to Cory Jones as a victim. The term "victim" is a conclusion that requires evidence to prove that a crime did, in fact, occur. And you, as jurors, make those decisions about whether or not the State has met the burden to show a crime was committed and that there was a victim. Referring to someone as a victim when there's . . . been made no decision by you, as jurors, is inappropriate to refer to them as a victim.
>
> I've now instructed this witness and all further witnesses to refer to Mr. Jones by his name and not the word "victim."

Although the motion in limine stated that Jones could not be called a "victim," the district court quickly struck the improper response, cautioned the jury to disregard it, and issued a cautionary instruction as permitted by *Wade*. *See id*. The district court did not abuse its discretion in denying Brimmer's motion for mistrial.

Brimmer also claims prosecutorial error because the State did not advise its witness of the in limine order forbidding referral to Jones as a victim. In so doing Brimmer cites *State v. Plain*, where a prosecutor erred by persistently using the term "victim" in closing arguments to refer to the complaining witness. 898 N.W.2d 801, 820 (Iowa 2017). But in *Plain*, a prosecutor called a complaining witness a victim when jury credibility decisions were required to determine whether a crime had even occurred. *Id*. at 817–21. The supreme court in *Plain* suggested a trial court causes no cognizable harm "when there is no doubt that a crime was committed and simply the identity of the perpetrator is in issue." *Id*. at 20 (quoting *Jackson v. State*, 600 A.2d 21, 24 (Del. 1991)), *abrogated in part on other grounds by State v. Lilly*, 930 N.W.2d 293 (Iowa 2019).

Here, the prosecutor never referred to Jones as a victim. And there is no question that Jones, the complaining witness, was beaten and stabbed multiple times; it is a matter of what Brimmer knew relative to who attacked Jones rather than whether he was attacked. The district court did not abuse its discretion by concluding Brimmer suffered no prejudice and denying Brimmer's motion for a mistrial.

**AFFIRMED.**