*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TODD WISNIEWSKI,

        Defendant-Appellant.

FOR PUBLICATION
January 08, 2025
12:30 PM

No. 361978
Grand Traverse Circuit Court
LC No. 2022-013973-FC

Before: RIORDAN, P.J., and BOONSTRA and YATES, JJ.

RIORDAN, P.J.

Defendant Todd Wisniewski appeals as of right from his jury-trial convictions of four counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b) (person under 13 years of age), and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (person under 13 years of age).[1] On June 17, 2022, the trial court sentenced defendant to terms of imprisonment of 25 to 30 years for the CSC-I convictions and 4 to 15 years for the CSC-II conviction, with CSC-I Count 2 to be served consecutively to CSC-I Count 1, and the remaining sentences to be served concurrently.

In summary, for the reasons explained *infra*, we affirm defendant's convictions and sentences. First, defendant was not deprived of his rights to due process or a fair trial as severance of the multiple counts of CSC-I and CSC-II was not required under MCR 6.120. Additionally, trial counsel's performance was not ineffective for failing to move to sever the multiple counts. Second, the trial court did not abuse its discretion by admitting into evidence text messages that defendant sent to his former girlfriend, as well as Internet searches and the browser history found on defendant's electronic devices, all of which contained indications of sexual misconduct. Third, defendant has not demonstrated plain error with regard to his claims that (a) the trial court erred by allowing a family friend to testify regarding defendant's other acts of sexual misconduct under MCL 768.27a; or that (b) he received ineffective assistance of counsel because trial counsel failed

---

[1] Defendant was charged with a second count of CSC-II relating to A.B., but the jury acquitted him of this charge.

to object to the prosecution's comments during closing arguments. Fourth, defendant has not established plain error affecting his substantial rights with respect to his unpreserved claim that the prosecution committed error by repeatedly referring to the complainants as "the victims." Fifth, the trial court did not abuse its discretion by denying defendant's motion for an *in camera* review of I.Z.'s counseling records as defendant did not establish a reasonable probability that the privileged records were likely to contain material information necessary to his defense. Sixth, the trial court did not abuse its discretion by imposing consecutive sentences for Counts 1 and 2 of defendant's convictions of CSC-I because the trial court gave particularized reasons for its sentencing decision, including its consideration of defendant as the offender as well as the offenses he committed. Finally, the trial court's imposition of consecutive sentences was reasonable because the sentences satisfy the principle of proportionality.[2]

Defendant was convicted of sexually abusing four young girls, I.Z., K.D., S.B., and A.B., in Traverse City. At trial, I.Z., K.D., and S.B. testified at length about defendant's ongoing sexual abuse of them. Other trial witnesses included K.D.'s grandmother, a romantic partner of defendant; Anne Drake, another romantic partner of defendant; Teresa Lutke, a forensic interviewer for a local advocacy center; and J.W., a woman who had been sexually abused by defendant when she was younger, but who was not identified as a victim in the instant matter. In addition, the prosecution presented evidence showing that defendant had performed incriminating Internet searches and browsing, and expressed to others a sexual interest in young girls.

## I. SEVERANCE

Defendant argues that he was deprived of his rights to due process or a fair trial because there should have been severance of the multiple counts of CSC-I and CSC-II pursuant to MCR 6.120. He also argues that trial counsel's performance was deficient for not moving for severance. We disagree.

Generally, the question whether joinder is permissible presents a mixed question of fact and law. *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009). However, because defendant did not preserve his specific claims alleging constitutional violations arising from the joinder of his claims, this Court reviews for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In *Carines*, *id*. at 763-764, our Supreme Court explained the three requirements that a defendant must satisfy to avoid forfeiture under the plain-error rule:

> 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. [*United States v Olano*, 507 US 725, 731-

---

[2] On appeal, defendant filed a motion to remand to the trial court for an evidentiary hearing on the alleged ineffective assistance of counsel. We denied the motion to remand "for failure to persuade the Court of the necessity of a remand at this time" and further provided that our denial of remand was "without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar." *People v Wisniewski*, unpublished order of the Court of Appeals, entered August 15, 2024 (Docket No. 361978). Having further considered the case, we again conclude that remand is not warranted.

734; 113 S Ct 1770; 123 L Ed 2d 508 (1993)]. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. *Id*., p 734. "It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Id*. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error " 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id*., pp 736-737.

Our review of defendant's claim alleging ineffective assistance of counsel is limited to errors apparent from the record because an evidentiary hearing was not held in the trial court. *People v Serges*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 355554); slip op at 15. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v Johnson*, 293 Mich App 79, 90; 808 NW2d 815 (2011) (quotation marks and citation omitted). "This Court reviews for clear error a trial court's factual findings, while we review de novo constitutional determinations." *Id*. "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Chaney*, 327 Mich App 586, 587 n 1; 935 NW2d 66 (2019) (quotation marks and citation omitted).

MCR 6.120 addresses joinder and severance and provides, in pertinent part:

> **(A) Charging Joinder**. The prosecuting attorney may file an information or indictment that charges a single defendant with any two or more offenses. Each offense must be stated in a separate count. Two or more informations or indictments against a single defendant may be consolidated for a single trial.
>
> **(B) Postcharging Permissive Joinder or Severance**. On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C), the court may join offenses charged in two or more informations or indictments against a single defendant, or sever offenses charged in a single information or indictment against a single defendant, when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.
>
> (1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on
>
> (a) the same conduct or transaction, or
>
> (b) a series of connected acts, or
>
> (c) a series of acts constituting parts of a single scheme or plan.
>
> (2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either

the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

As an initial matter, while defendant did not file a motion to sever the six counts against him in the trial court, the joinder of the six counts was nonetheless appropriate under the court rule. As our Supreme Court acknowledged in *Williams*, 483 Mich at 233, joinder of offenses under MCR 6.120 is appropriate if the offenses are "related." "Offenses are 'related' if they comprise either 'the same conduct' or 'a series of connected acts or acts constituting part of a single scheme or plan.' " *Id.*, quoting MCR 6.120(B).

All six of the CSC charges that were joined at trial were closely related to each other. In *People v Thurmond*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 361302); slip op at 8, this Court affirmed the trial court's denial of the defendant's motion for severance with respect to a charge of CSC-III, MCL 750.520d(1)(b). The defendant had argued that allowing the prosecution to join the charge resulted in unfairness to him, given the potential for confusion arising from the nature of the evidence and the complicated facts of the case. *Id.* This Court determined that the CSC-III charge was "closely related" to the other charges, as contemplated by MCR 6.120, where the prosecution presented ample evidence that all of the charges against the defendant "were related because they involved a series of connected acts constituting parts of a single scheme or plan." *Id.* at ___; slip op at 9.

Here, the evidence similarly demonstrated that all six counts against defendant were related to the extent that they involved a series of connected acts amounting to parts of a single scheme or plan. *Id.* For example, I.Z. and K.D. both testified that they were very young when the sexual abuse began. The evidence also showed that defendant exploited personal relationships of trust with both I.Z. and K.D. Defendant's specific method of sexually abusing both girls also was similar, in that he would, while being in close physical proximity to them, put his hands in their pants and touch their genitals. Defendant removed his clothes and forced both I.Z. and K.D. to touch his penis. Defendant also performed oral sex on both I.Z. and K.D., and the sexual abuse occurred in the presence of other people who were unaware of defendant's actions. With I.Z., her mother and sister often were in the same room, and with K.D., her grandmother, defendant's girlfriend at the time, was showering in another room.

Similarly, S.B. testified that defendant asked A.B.[3] and S.B. to sit on his lap and he would put his hand on their waists and "move us back and forth" and S.B. could feel "[defendant's] d**k under me." Defendant would grasp the girls by the waist and rub his genitals up against them as they were on an elliptical machine. When the girls rolled a tennis ball back and forth under defendant's bed with him, he pulled out his penis. Also, the common themes underlying defendant's scheme and plan to sexually exploit them were almost identical with each of the victims. As with both I.Z. and K.D., defendant's sexual abuse of S.B. and A.B. began when the girls were very young. S.B. testified she and A.B. were approximately six years old when her family moved into the house next door to defendant, and he became a close and trusted friend with

---

[3] We acknowledge that defendant was acquitted of Count 6, CSC-II with respect to A.B., but to the extent that S.B.'s testimony included relevant references to the sexual abuse of A.B., it has been included in our opinion.

their parents. Defendant then went on to exploit a relationship of trust and authority with their parents. Accordingly, with this pattern of behavior, defendant fails to demonstrate plain error with respect to his unpreserved claim that the four counts of CSC-I and two counts of CSC-II should not have been joined at trial.

Defendant further argues that the prosecution's decision to join all six charges of CSC-I and CSC-II against him at one trial violated his right to due process and a fair trial. The heart of defendant's contention is that the "sheer volume of acts [of sexual abuse] admitted at trial," the number of complainants who testified against him, and the number of counts joined at trial combined to rise to a level of extreme prejudice requiring a new trial. In essence, defendant finds fault with the volume of evidence leading to his convictions.

In *Williams*, 483 Mich at 245, our Supreme Court recognized that under certain circumstances, misjoinder can reach the level of a constitutional violation. In *Williams*, *id*., quoting *United States v Lane*, 474 US 438, 446 n 8; 106 S Ct 725; 88 L Ed 2d 814 (1986), our Supreme Court explained:

> [I]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial.

As stated, we conclude that defendant has not established plain error with respect to his claim that all six CSC counts against him were impermissibly joined at trial. Because there was not any impermissible misjoinder under MCR 6.120, defendant also is unable to establish a constitutional violation, either in the way of the deprivation of his right to a fair trial, or a violation of due process. See *Williams*, 483 Mich at 245. This is particularly true because, while the appropriate standard of review is for plain error, rather than for harmless error under MCL 769.26,[4] even if defendant's multiple charges had been severed and tried at multiple trials, the prosecution could have introduced the other-acts evidence under MRE 404(b)[5] or MCL 768.27a at each of his hypothetical trials. See *Williams*, 483 Mich at 244 ("[A] misjoinder may be deemed harmless only if all or substantially all of the evidence of one offense would be admissible in a separate trial of the other.") (quotation marks and citation omitted).

---

[4] MCL 769.26 provides:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

[5] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxiii (2023). Our opinion relies on the version of MRE 404(b) in effect at the time of defendant's trial.

Turning next to defendant's claim of ineffective assistance of counsel based on his misjoinder and due-process claims, defendant is required to establish, pursuant to *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984), (1) that trial counsel's performance fell below an objective standard of reasonableness, and (2) the deficiencies prejudiced defendant. *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). In *Randolph*, *id*., our Supreme Court, quoting *Strickland*, 466 US at 694, explained the concept of prejudice in the following manner:

> Prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

This Court will not review trial counsel's performance with the benefit of hindsight, substituting its judgment for that of trial counsel on matters of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). Defendant also has a heavy burden to overcome the presumption that in making decisions regarding defense strategy, trial counsel employed reasonable trial strategy. *Id*.

Defendant has not overcome the presumption that trial counsel's decisions conformed with sound trial strategy. Trial counsel likely understood that it was appropriate for the prosecution to join charges that were "related" under MCR 6.120. As explained, the evidence showed that defendant engaged in the same type of conduct with respect to the charged offenses involving I.Z., K.D., S.B., and A.B., and that his conduct was aptly characterized as a "a series of connected acts or acts constituting part of a single scheme or plan" involving multiple young girls. See *Williams*, 483 Mich at 233. Accordingly, trial counsel reasonably surmised that any motion to sever would not have been successful, particularly because even if defendant's multiple charges were severed, the other-acts evidence of his sexual abuse of the other individuals presumptively would have been admissible under MRE 404(b) or MCL 768.27a. Therefore, defendant's claim that trial counsel's performance fell below an objective standard of reasonableness is not persuasive. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

Regardless, with respect to the second *Strickland* requirement that the misjoinder resulted in prejudice against defendant, as we have already discussed, even if defendant's multiple counts of CSC-I and CSC-II were severed, and multiple trials were held, it is very likely that evidence of defendant's other acts of sexual abuse involving the other individuals would have been admitted at the other trials under MRE 404(b) or MCL 768.27a. Therefore, defendant is hard-pressed to assert that there exists a reasonable probability that, but for trial counsel's alleged unprofessional conduct and errors, the result of his criminal proceedings would have been different. *Randolph*, 502 Mich at 9. As a practical matter, severing the six counts would mean that defendant would have had repetitive trials, all with the same evidence and testimony.

Therefore, defendant's unpreserved claims (1) that his four charges of CSC-I and his two charges of CSC-II ought to have been severed, (2) that his rights to due process and a fair trial were violated, and (3) that he received the ineffective assistance of counsel all fail.

## II. INDICATIONS OF SEXUAL MISCONDUCT

Defendant argues that the trial court abused its discretion by admitting into evidence a text message that he sent to Drake, communications that he had with K.D.'s grandmother, and Internet searches and browser history found on his electronic devices, all of which contained indications of sexual misconduct. We disagree.

This Court reviews preserved claims of evidentiary error for an abuse of discretion. *People v Bergman*, 312 Mich App 471, 482; 879 NW2d 278 (2015). If the trial court's decision falls outside the range of reasonable and principled outcomes, its decision amounted to an abuse of discretion. *Id*. at 483. The trial court necessarily abuses its discretion when it makes an error of law. *People v Aiyash*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 369689); slip op at 5.

At the time of defendant's trial, MRE 404(b) provided, in pertinent part:

**(b) Other Crimes, Wrongs, or Acts**.

(1) *Evidence of other crimes, wrongs, or acts* is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other *crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case*. [Emphasis added.]

The prosecution sought to admit the text message from defendant to Drake, as well as the communications that defendant had with K.D.'s grandmother, as admissions of a party-opponent under MRE 801(d)(2)(A). In *People v Goddard*, 429 Mich 505, 514-515, 518; 418 NW2d 881 (1988), our Supreme Court recognized that a defendant's statements of general intent are not prior acts under MRE 404(b). Instead, the Court held that such statements are considered the statement of a party-opponent under MRE 801(d)(2)(a), and before admitting this evidence, the trial court first must determine whether the statement is relevant under MRE 401, and second, whether its probative value is substantially outweighed by the danger of unfair prejudice under MRE 403. *Goddard*, 429 Mich at 515.

At the time of defendant's trial, MRE 801(d) provided, in pertinent part:

**Statements Which Are Not Hearsay**. A statement is not hearsay if—

\* \* \*

(2) *Admission by Party-Opponent*. The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity.

MRE 401 defined relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under MRE 402, all relevant evidence is

admissible, except as otherwise provided by the state and federal constitutions, and the rules of evidence.

Further, under *Goddard*, 429 Mich at 514-515, the trial court was required to balance the probative value of the evidence against its prejudicial effect as required by MRE 403. At the time of trial, MRE 403 provided, in pertinent part:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

This Court has acknowledged that all evidence admitted against a defendant carries the potential of prejudice; it only is unfairly prejudicial evidence that should be excluded under MRE 403. *People v McGhee*, 268 Mich App 600, 613-614; 709 NW2d 595 (2005).

The trial court correctly concluded that defendant's statements to K.D.'s grandmother regarding S.B. and A.B., the sisters who resided in a mobile community and whom defendant was accused of sexually abusing, were relevant to the charges against him. See MRE 401 and 402. Specifically, defendant's statements that A.B. had watched her mother having sex and "like[d] it," that S.B. was a slut and had sex "like a slut," and that he was looking for young girls in trailer parks to bring home for sexual purposes were, as the trial court remarked, "directly relevant" to the charged crimes involving both S.B. and A.B. as they illustrated to the jury that defendant harbored a strong sexual interest in children. The statements also illustrated for the jury defendant's motives in developing relationships with S.B. and A.B., the reasons for inviting them to his home, and his state of mind when he committed the acts against them. Simply put, the statements had significant probative value as they bore directly on defendant's motive and state of mind regarding the charged offenses. Moreover, we discern no obvious "unfair prejudice" for the purposes of MRE 403 because there is nothing "unfair" about presenting the jury with defendant's specific motive and state of mind regarding S.B., A.B., and the other young girls. Therefore, the trial court did not abuse its discretion by admitting the statements into evidence.

Similarly, the trial court did not abuse its discretion in admitting into evidence the text message from defendant to Drake regarding A.B., in which defendant described A.B.'s "smooth . . . p***y lips." As the trial court acknowledged, the evidence was relevant because it demonstrated defendant's sexual interest in one of the victims. As with the statements to K.D.'s grandmother, we are not persuaded that the trial court's conclusion that the probative value of the text message to Drake was not substantially outweighed by "unfair" prejudice was outside the range of reasonable and principled outcomes. See MRE 403. Notably, the jury acquitted defendant of the charge of CSC-II pertaining to A.B., which undermines defendant's contention that he was unfairly prejudiced by admission of this evidence. *Id.* Therefore, we find, the trial court's decision to admit this evidence did not amount to an abuse of discretion.

With respect to the Internet searches and browser history secured from defendant's devices, defendant does not challenge the trial court's determination that these fell within the ambit of MRE 801(d)(2)(A). Defendant instead asserts that the trial court erred in admitting the Internet searches

and browser history as they were irrelevant, inflammatory, and highly prejudicial in a trial that amounted to a credibility contest. See MRE 403. We disagree.

The nature of several of the Internet searches and the browser history was relevant because they were probative both of defendant's state of mind and his motive as related to the charged offenses. For example, as the trial court noted, Counts 1 and 2 of the information charged defendant with CSC-I against his former stepdaughter, I.Z., and some of the searches pertained to fathers and stepfathers and daughters and stepdaughters. To the extent that some of the searches on defendant's devices sought images of "8 year old blonde girl[s]" and "10 year old blonde girl[s]," because the victims in this case were of those young ages, these searches also were relevant to defendant's state of mind and motive. Moreover, given the specific charges against defendant in this case, each of which involved a sexual assault against a young girl, there was nothing "unfairly" prejudicial about using this evidence against defendant. Thus, the trial court did not abuse its discretion by admitting the challenged Internet searches and browser history into evidence.

We note that the trial court did not admit all potentially incriminating Internet searches and browsing history against defendant, despite the prosecution's urging to the contrary. That the trial court was acutely aware of the potential of unfair prejudice, and its desire to avoid it, was made clear as the trial court excluded certain searches after it ruled that the searches were unfairly prejudicial. Those searches included Asian street meat, mini sex doll, skinny sex doll, donia small breast sex doll, free dirty POV sex galleries, POV – crazy sex pics, girlfriends walking around the house, and walking around the house in panties. The trial court also excluded searches that included the terms "teen," "young," and "girls," because the court could not determine whether those searches would provide evidence supporting the criminal charges against defendant. Accordingly, the trial court determined that the unfair prejudice of such searches outweighed any potential probative value of the evidence of such searches.

To summarize, given the trial court's thoughtful consideration of the evidentiary issues before it, we are not persuaded that the trial court's reasoning on these issues amounted to an abuse of discretion. See *People v Layher*, 464 Mich 756, 761; 631 NW2d 281 (2001).

### III. OTHER-ACTS EVIDENCE

Defendant next argues that the trial court plainly erred by admitting evidence of other acts of sexual misconduct that he committed against J.W. as the probative value of the evidence was substantially outweighed by its prejudicial effect under MRE 403. Relatedly, defendant argues that the prosecution failed to provide proper notice of J.W.'s testimony as required by MCL 769.27a. We disagree with defendant.

This Court reviews unpreserved nonconstitutional errors for plain error. *People v Allen*, 507 Mich 597, 604; 968 NW2d 532 (2021).

J.W.'s testimony was admitted under MCL 768.27a, which provides, in pertinent part:

(1) *Notwithstanding [MCL 768.27], in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and*

*may be considered for its bearing on any matter to which it is relevant*. If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered. [Emphasis added.]

Our Supreme Court clarified in *People v Watkins*, 491 Mich 450, 487-488; 818 NW2d 296 (2012), that evidence otherwise admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial simply because a propensity inference is drawn. Specifically, our Supreme Court explained, in pertinent part:

This does not mean, however, that other-acts evidence admissible under MCL 768.27a may never be excluded under MRE 403 as overly prejudicial. There are several considerations that may lead a court to exclude such evidence. These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exhaustive. [*Id*. (footnote omitted).]

In *People v Berklund*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367568); slip op at 10, quoting *People v Uribe*, 499 Mich 921 (2016),[6] this Court acknowledged that these factors offer tools " 'to facilitate, not a standard to supplant,' a trial court's MRE 403 analysis."

On appeal, defendant asserts that J.W.'s testimony should have been excluded because of (1) the dissimilarity between the other-acts evidence and the charged crimes, (2) the lack of temporal proximity of the other-acts evidence to the charged crimes, (3), the infrequency of the other acts committed against J.W., and (4) the lack of need for J.W.'s testimony given the ample testimony given by I.Z., S.B., and K.D. We disagree.

In *Watkins*, 491 Mich at 491, our Supreme Court upheld the trial court's determination to admit evidence under MCL 768.27a. The Court did so because the other-acts evidence at issue in that case, "[i]n addition to being probative because of the propensity inference," also was supportive of the complainant's credibility, contained circumstances similar to the charged offense, and established the "modus operandi" of the defendant. *Id*.

Similarly, J.W.'s testimony was highly probative because of the propensity inference, and it also buttressed the credibility of I.Z., S.B., K.D., and K.D.'s grandmother, each of whom recounted details of defendant's sexual abuse or what he had said about his sexual interest in

---

[6] "Supreme Court orders that include a decision with an understandable rationale establish binding precedent." *People v Giovannini*, 271 Mich App 409, 414; 72 NW2d 237 (2006).

prepubescent girls. More significantly, J.W.'s account of what happened the evening that defendant sexually assaulted her was almost identical to what I.Z. and K.D. had encountered, with defendant using the opportunity of being in close physical proximity to the girls to perpetrate the sexual abuse, and doing so even though others were present in the room. With I.Z., her mother and sister were in the living room while defendant sexually abused her, and with K.D., her grandmother was in the shower while defendant sexually abused her in his bed. That J.W. was 14 years old when she was sexually abused, and I.Z. and K.D. were much younger when defendant began to sexually abuse them, six and nine years of age respectively, does not significantly undermine the probative value of this evidence, especially because I.Z. testified that the last time defendant sexually abused her was when she was 15 years old and the last time he made a sexual overture toward her was when she was 16 years old.

Put another way, the evidence that defendant previously committed a sexual assault against J.W. was prejudicial because it could demonstrate that defendant committed the charged crimes, but the evidence was not unfairly prejudicial under MRE 403 because "the evidence's propensity inferences weigh in favor of the evidence's probative value," as opposed to its prejudicial effect. *Berklund*, ___ Mich App at ___; slip op at 11. Additionally, similar to the circumstances at issue in *Berklund*, the evidence here concerning defendant's sexual assault of J.W. not only was supportive of the credibility of the multiple victims' testimony at trial, but it also provided the jury with a more complete picture of defendant's history, particularly regarding his sexual interest in young girls. Moreover, it is worthy of note that the trial court instructed the jury as follows:

> The prosecution has introduced evidence of claimed acts of sexual misconduct by the defendant with minors for which he is not on trial. Before you may consider such alleged acts as evidence against the defendant, you must first find that the defendant actually committed these acts. If you find that the defendant did commit those acts, you may consider them in deciding if the defendant committed the offenses for which he is now on trial. *You must not convict the defendant here solely because you think he is guilty of other bad conduct*. The evidence must convince you beyond a reasonable doubt that the defendant committed the alleged crime, or you must find him not guilty. [Emphasis added.]

This instruction to the jury had the effect of minimizing the danger of unfair prejudice because the trial court instructed it of the appropriate use of other-acts evidence. *Id*. Thus, any danger of unfair prejudice was alleviated " 'because jurors are presumed to follow their instructions.' " *Id*., quoting *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

Defendant further argues that the admission of J.W.'s testimony under MCL 768.27a was improper because the prosecution did not comply with the notice requirement of the statute. We disagree.

The notice provision of MCL 768.27a(1) provides, in pertinent part:

> If the prosecuting attorney intends to offer evidence under this section, *the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good*

*cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.* [Emphasis added.]

The statute thus required that the prosecution disclose to the defense J.W.'s proposed evidence at least 15 days before the scheduled date for trial. *Id.* The prosecution was required to provide defendant with either "statements" of J.W., or a "summary of the substance of any testimony that is expected to be offered." *Id.* The record shows J.W. testified at the preliminary examination, and that defense counsel had an opportunity to perform a cross-examination after listening to her direct examination. In *People v Gaines*, 306 Mich App 289, 302; 856 NW2d 222 (2014), this Court held that "the statute only requires the prosecutor 'to disclose the evidence to the defendant at least 15 days' before trial." Accordingly, by presenting J.W. as a witness at the preliminary examination, we are satisfied that the prosecution complied with its statutory obligation to provide a summary of the substance of J.W.'s testimony that it expected to offer at trial. Further, because J.W. was identified by the prosecution as a witness about four months before trial, defendant certainly had notice that she would be testifying in the first instance.[7]

Therefore, defendant has not demonstrated plain error with regard to his claim that J.W.'s testimony was improperly admitted under MCL 768.27a. For these reasons, the trial court did not plainly err by admitting J.W.'s testimony under MRE 403 or MCL 768.27a.[8]

## IV. PROSECUTORIAL ERROR

---

[7] This Court reached a similar conclusion in *People v Williams*, unpublished per curiam opinion of the Court of Appeals, issued March 28, 2019 (Docket No. 339222). In that case, defense counsel had argued that he was not provided a written notice of intent under the statute, but the record indicated that defense counsel did have notice of the other-acts evidence. *Williams*, unpub op at 10. This is because when defense counsel had objected to the other-acts evidence at trial, the trial court had stated its understanding that defense counsel was aware of the other-acts allegations. *Id.* Defense counsel agreed, but stated that while he had received the evidence, he had not received "formal notice." *Id.* Instead, the defense had been provided evidence of the other-acts allegations in discovery. *Id.* This Court acknowledged that the statutory language of MCL 768.27a does not "expressly require formal written notice," and because defense counsel had acknowledged on the record that he had received the relevant evidence, as well as informal notice, from the prosecution, any notice challenge was not persuasive. *Id.*

While unpublished decisions of this Court are not binding precedent, they may nonetheless be considered instructive or persuasive. *People v Knepper*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363191); slip op at 8 n 1.

[8] To the extent that defendant argues that trial counsel was ineffective for failure to object to J.W.'s testimony on the basis that it violated MRE 403 and the notice requirement of MCL 768.27a, counsel cannot be deemed ineffective for failure to raise a futile argument. See *Ericksen*, 288 Mich App at 201.

-12-

Defendant next argues that the prosecution plainly erred by vouching for the credibility of witnesses and in other respects during its closing argument.[9] Again, we disagree.

The prosecution's primary responsibility is to seek justice, rather than to secure a conviction. *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 13. Therefore, the test for prosecutorial error is whether the defendant was denied a fair and impartial trial. *Id*. This Court reviews claims of prosecutorial error case by case, reviewing the record as a whole and considering the prosecution's comments in their proper context. *Id*. This Court also must review the prosecution's comments in light of the arguments made by defense counsel " 'and the relationship they bear to the evidence admitted at trial.' " *Id*., quoting *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008). While the prosecution is precluded from arguing facts not in evidence or mischaracterizing the evidence presented, the prosecution is free to argue all reasonable inferences that arise from the evidence. *People v Anderson*, 331 Mich App 552, 565; 953 NW2d 451 (2020).

Defendant challenges multiple portions of the prosecution's closing argument. Defendant first challenges the prosecution's assertion that his sexual attraction to children was made clear through his Internet search and browsing history, which included an "inappropriate" and "borderline-nature" of searches of 8 and 10-year-old girls, and "which there is not an understandable reason in evidence that [defendant] would have to be looking at those." Defendant relatedly claims that the prosecution was commenting on facts not in evidence when it stated that defendant was looking at photographs of an 8-year-old girl on shutterstock.com and photos of a 10-year-old girl on istockphotos.com.

Contrary to defendant's claims, the prosecution did not argue facts not in evidence with regard to this issue or otherwise present an improper argument to the jury. Instead, the prosecution permissibly argued reasonable inferences arising from the evidence presented at trial. *Id*. Specifically, prosecution Exhibit 9 revealed that defendant's cellular phone accessed photographs of 8- and 10-year-old blonde girls.[10] While digital analyst Coburn conceded that she could not say with certainty that it was defendant who accessed these photographs, his cellular phone was password-protected, it was found in the back pocket of his pants, and defendant had acknowledged to Trooper Tillman, as well as to K.D.'s grandmother and Drake, that he had a sexual interest in young, prepubescent girls. Therefore, it was reasonable for the prosecution to argue, on the basis of these inferences arising from the evidence, that it was defendant who accessed the photographs on his cellular phone.

---

[9] This Court reviews unpreserved allegations of prosecutorial error for plain error. *Serges*, ___ Mich App at ___; slip op at 15.

[10] Digital analyst Coburn testified that prosecution Exhibit 9, her Cellebrite report from defendant's cellular phone secured from the back pocket of defendant's pants, revealed that two images were taken on that phone, one a photograph of an of an 8-year-old girl on shutterstock.com and one a photograph of a 10-year-old girl on istockphotos.com.

Second, defendant challenges the following comment the prosecution made in closing argument:

First, this again, just being a sampling or a smattering of the things that were shown in [defendant's] browser history, the first at some point prior to 2017, looking at up [sic] on this experience, -- this social media or networking site, where people can join a group. So experience, meaning something you've experienced, groups, groups of people, had sex with my stepdaughter is not fantasizing about stories about, this is actually saying – this is a group of people who have had sex with their stepdaughter and want to talk about it.

Again, defendant claims that the prosecution commented on facts not in evidence. We disagree.

Coburn testified that prosecution Exhibit 8 contained a browser history of the websites that had been accessed on defendant's laptop computer. One website was ExperienceProject.com, which Coburn described as a former social networking site, which closed in 2016, that allowed users to join groups they were interested in, including "experiences, hobbies, whatever it may be." Coburn also testified that the user of defendant's laptop accessed the category "had sex with my stepdaughter." While defendant asserts that there was no factual basis for the prosecution's comments that he had accessed the category of individuals having sex with their stepdaughters, I.Z. gave detailed testimony about defendant's sexual abuse of her while she was his stepdaughter. It was therefore reasonable for the prosecution to argue, on the basis of reasonable inferences arising from the evidence, that it was defendant who accessed the ExperienceProject website on his own laptop computer, and specifically the category of individuals who "had sex with my stepdaughter."

Regarding defendant's third challenge, while playing the recorded interview between defendant and Trooper Tillman, the prosecution played a clip during closing argument in which defendant talked about how K.D. was grabbing defendant's penis as they slept in bed together. After playing the interview clip, the prosecution made the following comment, repeating defendant's testimony:

It only took, like, two or three times, and I stopped inviting [K.D. and K.D.'s grandmother] out. Meaning even after the first time he didn't even stop sleeping in his boxers in the bed with a ten-year-old. There – there are a lot of reasons to doubt that. One big one, kids aren't sexual unless they're sexualized.

Defendant challenges this comment, asserting that the prosecution did not present expert evidence to support its claim. We acknowledge that the statement, "kids aren't sexual unless they're sexualized," might not have been supported by the evidence. However, even accepting defendant's contention that it was erroneous for the prosecution to make this statement without evidence to support its claim, defendant does not demonstrate plain error affecting his substantial rights. In other words, defendant fails to show that any error affected the outcome of his trial. *Carines*, 460 Mich at 763. Further, the trial court instructed the jury that the comments of counsel were not evidence, jurors are presumed to follow their instructions, and this Court presumes that jury instructions will cure most errors. *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786

(2020). Given the isolated nature of the prosecution's comment and the trial court's instruction to the jury, defendant has not established that plain error affecting his substantial rights occurred with regard to this issue.

Defendant also raises multiple vouching challenges, none of which have merit.

It is well-settled that the prosecution is not permitted to vouch for the credibility of a witness. *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). For example, in *Thomas*, *id*. at 453, the defendant argued that the prosecution impermissibly vouched for the credibility of a police officer by indicating that the officer, who was the affiant for a search warrant, worked for the Executive Protection Unit responsible for the mayor's safety. This Court disagreed, observing that the prosecution merely was explaining that the police had successfully obtained a search warrant by following the proper procedures, and it was appropriate for the prosecution to argue all reasonable inferences arising from the evidence that was already properly admitted. *Id*. at 454.

Concerning defendant's vouching challenges here, when addressing Count 3 involving the penetration of K.D., the prosecution acknowledged that there was "quite a bit of [questioning] about the definition of vagina, whether something was inside the hole where blood comes out." The prosecution went on to state that K.D. remained clear and consistent throughout her testimony on the subject of where defendant penetrated her, telling the truth each time she was questioned, both at trial and at the preliminary examination, stating, in pertinent part:

> But [K.D.] was clear and she was consistent, she told the truth every time. It was adults getting confused on what she meant by vagina. And you may have caught that Teresa Lutke talked about how it's important to understand what kids mean when they use specific words.
>
> The defense will probably talk a lot of alleged inconsistencies with these children. There won't be a motive that they all have to make it up, -- these four. There won't be any claim that they got together -- there's no evidence of that. It doesn't fit with any piece of evidence. It doesn't fit with a rational take on anything; they didn't get together.

The prosecution then made the following statement regarding the credibility of the complainants:

> Through they [sic] – the extreme psychological trauma that you witnessed. Through talking about these horrible details of their life, unless it were true. So I ask you to continue circling back to that. The why, and then the demeanor that you witnessed.

This statement did not constitute improper vouching. The prosecution simply was asserting that all three of the victims, I.Z., K.D., and S.B., were credible in their recollection of the sexual abuse, and that their testimony should be believed. The prosecution also contended that the three victims did not have a motive to lie, or to act in concert to fabricate their testimony. It was appropriate for the prosecution to advance this argument during its closing, and these comments must be evaluated in light of the defense arguments and theories. *Smith*, ___ Mich App at ___;

slip op at 13. Here, the defense theory was that all three victims and K.D.'s grandmother were either lying or had misunderstood defendant. For example, with regard to I.Z., defendant attempted to pin any blame on her, accusing her of sexually propositioning him. Thus, the prosecution was permitted to respond to that theory during its closing argument.

Accordingly, we are not persuaded that the prosecution's focus on the credibility of its key witnesses during closing argument was improper or amounted to impermissible vouching for prosecution witnesses.[11]

Finally, to the extent that defendant contends that trial counsel's performance was ineffective for failing to object to the prosecution's alleged errors, trial counsel is not required to raise an objection that does not have merit. *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015). However, even if this Court concluded that trial counsel's performance fell below an objective standard of reasonableness, defendant has not made the requisite showing of prejudice. The three victims gave detailed, consistent, and compelling testimony regarding defendant's repeated sexual abuse, which was corroborated by defendant's statements to K.D.'s grandmother, as well as his text messages to her and Drake regarding his sexual interest in young girls. In addition, defendant conceded during the interview with Trooper Tillman that he was sexually interested in young girls. Moreover, J.W. testified regarding an incident of other-acts sexual abuse under MCL 768.27a that was nearly identical to what I.Z. and K.D. had experienced. Under these circumstances, we are not persuaded that, but for the decision of trial counsel not to raise an objection to the prosecution's valid commentary on the credibility of its witnesses, which had been attacked during trial, there is a reasonable probability that the outcome of these proceedings would have been different. See *Randolph*, 502 Mich at 9.

## V. COMPLAINANTS AS "VICTIMS"

Defendant argues that the trial court plainly erred by allowing the prosecutor to refer to the complainants in this CSC prosecution as "victims." We disagree.

Prior to trial, defendant filed a motion in limine requesting that the trial court order that the prosecution be precluded calling the complainants "victims" in the presence of the jury. The prosecution then filed a response, and following a hearing on the motion, the trial court denied the motion. However, now, defendant's claim of error on appeal is framed as a challenge to the prosecution's conduct at trial, characterizing its repeated reference to the complainants as victims as "prosecutorial misconduct," i.e., prosecutorial error. To the extent that defendant claims that the prosecution's repeated references to the complainants as "victims" amounted to prosecutorial

---

[11] Again, even if we agreed with defendant's contention that error occurred, the trial court instructed the jury that counsel's comments were not evidence, the jury is presumed to follow its instructions, and this Court presumes that the trial court's instructions cure most errors. *Zitka*, 335 Mich App at 348.

-16-

error, this Court reviews unpreserved allegations of prosecutorial error for plain error. *Serges*, ___ Mich App at ___; slip op at 15.[12]

Throughout jury selection, the prosecution referred to the complainants as "the victim[s]" while questioning potential jurors. For example, the prosecution asked the potential jurors the following question:

> Okay. Have any of you had somebody disclose to you that they were the victim of sexual abuse or sexual assault?

Later, the prosecution informed the potential jurors, in pertinent part:

> The law in Michigan says that if the testimony of a victim proves the crime to you beyond a reasonable doubt, that testimony alone is enough – that individual witness, DNA wouldn't be necessary. That law says if you believe that victim beyond a reasonable doubt, that's enough.
>
> Does anybody have concerns about their ability to follow that law?

The trial court then instructed the jury in its preliminary instructions regarding the definition of the term "victim." Specifically, the trial court instructed the jury, consistent with MCL 750.520a(s), that "[t]he term 'victim' means the person alleging to have been subjected to a criminal sexual conduct." During its opening statement, the prosecution told the jury that it would hear testimony from "three of the victims," one being defendant's former stepdaughter, as well as two "very young, small neighbor girls." In addition, during its questioning of Lutke, the prosecution asked her how, during her forensic interview, she would try to assess or determine whether the information that the child is sharing had been told to the alleged victim.

A review of the record thus reflects that the prosecution's main references to each complainant as "the victim" were during jury selection, i.e., early in the proceedings. The trial court swiftly informed the jury in its preliminary instructions of the definition of "victim" under the applicable legislation, that being MCL 750.520a(s). Because the CSC section of the penal code establishes that the complainant in a CSC case is the "victim,"[13] and because the trial court

---

[12] To preserve a claim of prosecutorial error, defendant was required to raise a contemporaneous objection, which he failed to do. *Serges*, ___ Mich App at ___; slip op at 15. Accordingly, defendant's allegations of prosecutorial error have not been preserved for this Court's review. *Id.*

We question whether a prosecutor can commit error by acting consistent with a trial court's evidentiary ruling. However, we will nonetheless address the merits of defendant's unpreserved issue of prosecutorial error.

[13] Similarly, the specific statutes criminalizing CSC repeatedly refer to "the victim." For example, the statute criminalizing CSC-I, MCL 750.520b, refers to "the victim" 21 times. See, e.g., MCL 750.520b(1)(e) (criminalizing sexual penetration when "[t]he actor is armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon").

informed the jury of this fact while clarifying that victimization merely is an allegation, no prosecutorial error occurred. In other words, because the prosecution in this case used the language to refer to the complainants that has been codified by our Legislature, the trial court did not plainly err by allowing the prosecution to use that language.

More importantly, while defendant makes a general assertion that his right to a fair trial was undermined, he does not offer a well-developed factual or legal argument explaining how the prosecution's reference to the complainants as "the victim[s]" deprived him of the right to a fair trial.[14] To the contrary, even to a layperson on the jury, the clear basis for maintaining the criminal proceedings is the fact that the prosecution believes that the complainant actually is "the victim." See *Weatherly v State*, 283 SW3d 481, 486 (Tex Ct App, 2009) ("While use of the word 'victim' assumes a crime has been committed, the fact that a prosecutor is of that view would not surprise a reasonable juror, nor would the prosecutor's use of the word in argument or voir dire generally be understood as anything other than the contention of the prosecution."). Thus, the prosecution's use of that term could not have suggested anything to the jury of which it was not already aware. See *State v Plain*, 898 NW2d 801, 842 (Iowa, 2017) (MANSFIELD, J., *concurring specially*) (observing that the prosecution's use of the term "victim" merely was "an extrapolation from the evidence"). For these reasons, we find no reason to conclude that defendant received an unfair trial because the prosecution occasionally referred to the complainants as "the victim[s]" during the proceedings.

Accordingly, under Michigan law, it was appropriate for the prosecution to refer to the complainants as "the victim[s]," see MCL 750.520a(s), and doing so did not deprive defendant of his right to a fair trial. Therefore, defendant has not demonstrated plain error with respect to this issue. Indeed, defendant simply cannot establish plain error for the straightforward reason that no published Michigan decision or other authority of which we are aware precludes the prosecution from referring to the complainant as "the victim." See *People v Dinapoli*, 369 P3d 680, 685 (Colo Ct App, 2015) ("No published Colorado case discusses the propriety of referring to a complaining witness as the 'victim' at trial. Nor does any statute or well-settled legal principle do so. . . . In light of the lack of Colorado authority and the split of authority elsewhere on this issue, we cannot conclude that any error in allowing the complaining witness to be referenced as the victim was 'obvious.' ").

In any event, even if this Court were to accept defendant's contention that the prosecution's repeated references to the complainants as "the victims" amounted to plain error, defendant has not established that he suffered prejudice. The third requirement of the plain error test generally

---

[14] Defendant cites *Jackson v State*, 600 A2d 21 (Del, 1991), for the proposition that the term "the victim" only may be used when there is no dispute as to whether a crime occurred. We disagree. *Jackson* was a case involving "unlawful sexual intercourse" under Delaware law, but it does not appear that Delaware has a statute akin to MCL 750.520a(2) specifically defining "victim." Moreover, *Jackson* held that the prosecution's use of the term "the victim," while inappropriate, did not rise to the level of plain error. *Id*. at 24-25.

Given the existence of MCL 750.520a(s), we are inclined to distinguish *Jackson* on that basis but, in any event, we agree with *Jackson* that the use of the term is not plainly erroneous.

requires a showing of prejudice, i.e., that the error affected the outcome of the lower-court proceedings. *Carines*, 460 Mich at 763. Here, again, the trial court instructed the jury in its final instructions that the statements and arguments of counsel were not evidence, the jury is presumed to follow its instructions, and this Court presumes that the trial court's instructions cure most errors. *Zitka*, 335 Mich App at 348. Moreover, I.Z., K.D., and S.B. all provided testimony that inculpated defendant in the charged offenses, and K.D.'s grandmother and Drake's testimony, which included review of their respective communications with defendant, established his sexual proclivities toward very young girls. Further, Trooper Tillman and digital analyst Coburn presented evidence confirming defendant's sexual interest in young girls and showing that he had engaged in associated Internet searches and browser history. Finally, J.W. testified under MCL 768.27a that defendant had sexually abused her using a modus operandi that he had followed with both S.B. and K.D. Under these circumstances, and given this evidence, defendant is unable to establish that any alleged plain error affected the outcome of the lower court proceedings.

To summarize, to the extent that this issue is properly framed as implicating "prosecutorial error" or "prosecutorial misconduct," the trial court did not plainly err because Michigan statutes, particularly MCL 750.520a(s), contemplate that the term "victim" refers to the complainant in a CSC prosecution. Further, to the extent that defendant argues that referring to each complainant as "the victim" violated his right to a fair trial, see generally, *Berger v United States*, 295 US 78, 89; 55 S Ct 629; 79 L Ed 1314 (1935), common sense suggests that such language is consistent with the prosecutorial role. That is, a reasonable juror obviously would understand that the prosecution's position is that the complainant in a CSC trial is a "victim." Otherwise, the trial would not be taking place at all. Thus, we conclude that there was no violation of defendant's right to a fair trial. Regardless, even if the trial court did plainly err in some respect, defendant is not entitled to relief because the evidence against him was considerable and, as a result, his substantial rights were unaffected and he was not prejudiced.[15]

---

[15] The Court of Appeals of Ohio recently observed that "courts have held that a prosecutor's or a witness's use of the term 'victim' to refer to a complaining witness does not rise to the level of plain error." *State v Thomas*, 224 NE3d 176, 187 (Ohio Ct App, 2023) (quotation marks and citation omitted). Relatedly, courts have held that even if use of the term "victim" constitutes plain error, reversal is not warranted because the term's use is not prejudicial. See *Plain*, 898 NW2d at 842 (MANSFIELD, J., *concurring specially*) ("I have yet to find a conviction being reversed because the prosecutor used the word 'victim' in closing argument."); *Dinapoli*, 369 P3d at 685 ("Further, the references did not cause defendant sufficient prejudice to constitute plain error. Defendant argues that the references prejudiced her because the term 'victim' assumed that she had committed a crime against K.M., and that conveying this assumption to the jury subverted the presumption of innocence. The court instructed the jury about the presumption of innocence and burden of proof, however, during jury selection and in its written instructions, which it read before closing arguments."); *United States v Washburn*, 444 F3d 1007, 1013 (CA 8, 2006) ("[A] number of courts have determined that the use of the term 'victim' in jury instructions is not prejudicial to a defendant's rights when, as is the case here, the instructions taken as a whole clarify the government's burden of proving all elements of the crime.").

## VI. *IN CAMERA* REVIEW

Defendant argues that the trial court abused its discretion by denying his motion for an *in camera* review of I.Z.'s counseling records as he established a reasonable probability that the privileged records were likely to contain material information necessary to his defense. We disagree.

This Court reviews a trial court's decision whether to allow discovery in a criminal case for an abuse of discretion. See *People v Stanaway*, 446 Mich 643, 680; 521 NW2d 557 (1994). Whether a privilege is applicable is a question of law that this Court reviews de novo. *In re CADP*, 341 Mich App 370, 379; 990 NW2d 386 (2022). Issues involving the interpretation of a statute or court rule also are reviewed de novo. *People v Kimble*, 470 Mich 305, 308-309; 684 NW2d 669 (2004).

Before trial, defendant filed a motion for waiver of privilege and *in camera* inspection of I.Z.'s counseling records. Defendant argued that I.Z.'s preliminary examination testimony on various topics, including the names of the treatment providers with whom she consulted, was inconsistent. Defendant further argued that the defense had a good-faith belief that I.Z. had made additional conflicting and contradictory statements to her mental-health providers at college and a psychiatric hospital, which was "vital information" for the defense. The trial court denied the motion, reasoning that "the statements that are made which can be arguably inconsistent on the record in response to zealous questioning on the part of the defense attorney are not sufficient in and of themselves to establish that there is the potential of some helpful material in the records. There needs to be more."

In *Stanaway*, 446 Mich at 664, and its companion case, *People v Caruso*, our Supreme Court recognized that the right to access discovery in a criminal case is not absolute. In *Stanaway*, *id.*, the issue was the defendant's request for "discovery access to information that would be useful at trial for impeachment purposes" or as exculpatory evidence. However, in *Stanaway*, 446 Mich at 676, our Supreme Court recognized the need to balance the defendant's due-process right to access exculpatory evidence against the state's interest in its own counseling privileges that "enhance the healing process in the wake of abuse." The Court therefore addressed the circumstances under which privileged information should be discoverable in criminal proceedings. *Id.* at 648-649. Balancing those interests, our Supreme Court held that

> where a defendant can establish a reasonable probability that the privileged records are likely to contain material information necessary to his defense, an *in camera* review of those records must be conducted to ascertain whether they contain evidence that is reasonably necessary, and therefore essential, to the defense. Only when the trial court finds such evidence, should it be provided to the defendant. [*Id.* at 649-650.]

Notably, our Supreme Court observed that the defendant's "generalized assertion of a need" to undermine and attack the credibility of his accuser was insufficient to establish "the threshold showing of a reasonable probability that the records contain[ed] information material to his defense" to overcome the statutory privileges at issue. *Id.* at 650.

In *Stanaway*, *id*. at 681, the defendant had asserted that the records he sought were necessary "to his attempt to unearth any prior inconsistent statements" that the complainant had made in counseling. Our Supreme Court, *id.*, rejected the defendant's attempt to use a potential *in camera* review to obtain evidence that might be useful to impeach the complainant during cross-examination. Because the defendant had not put forth any "specific articulable fact[s]" to persuade the Court that the requested communications were necessary to a preparation of his defense, or established a "good-faith basis" that such statements were in fact made, our Supreme Court concluded that the defendant merely was "fishing." *Id*. The Court thus held that the defendant's request fell short of the requirements necessary to overcome the privilege and affirmed the trial court's decision to refuse to order an *in camera in*spection. *Id*. at 681-682.

Defendant here, like the defendant in *Stanaway*, argued that the *in camera* review of I.Z.'s counseling records was necessary to determine whether they contained information that could be used to impeach I.Z.'s credibility at trial. In support of his claim, defendant points to several alleged inconsistencies in I.Z.'s preliminary examination testimony, including who I.Z. first told about the sexual abuse, discrepancies between her preliminary examination testimony and what she told Trooper Tillman about defendant sexually abusing her in his bedroom, and whether she could remember the names of the individuals she spoke to at college and the psychiatric hospital. However, this is exactly the type of information that the defendant in *Stanaway* claimed could be revealed in an *in camera* review, and our Supreme Court flatly rejected such an assertion as lacking in support. In other words, defendant speculated that the privileged counseling records could contain information helpful to his defense, but he did not identify any specific articulable facts or good-faith basis to indicate that I.Z.'s counseling records actually would contain such helpful information. Put simply, our Supreme Court has rejected any attempt by a criminal defendant to articulate a "generalized assertion of a need," *id*. at 650, to undermine and attack the credibility of his accuser as a justification for an *in camera* review of records subject to the counselor-patient privilege. Instead, a defendant is required to meet the "the threshold showing of [establishing] a reasonable probability that the records contain[ed] information material to his defense" to overcome the statutory privileges at issue. *Id.* at 650. Aside from self-serving and conclusory allegations that I.Z. has an unspecified mental-health condition, and that her demeanor at the preliminary examination was unusual,[16] defendant in the matter before us has not put forth concrete facts establishing a reasonable probability that her counseling records contained information material to his defense.

Therefore, defendant was not entitled to his requested *in camera* review of records, and we affirm the trial court on this issue.

## VII. CONSECUTIVE SENTENCES

Finally, defendant argues that the trial court abused its discretion by imposing consecutive sentences for Counts 1 and 2 of his convictions of CSC-I because the trial court did not give

---

[16] Our review of the preliminary examination transcript largely reveals the opposite. I.Z.'s testimony was clear, cogent, and articulate, but she did appear to stumble and struggle upon rapid-fire and aggressive questioning from defense counsel.

particularized reasons for its decision, and that the consecutive sentences were not reasonable because they violated the principle of proportionality. We disagree.

In *People v Posey*, 512 Mich 317, 352; 1 NW3d 101 (2023) (opinion by BOLDEN, J.), our Supreme Court explained that "appellate courts must review all sentences for reasonableness, which requires the reviewing court to consider whether the sentence is proportionate to the seriousness of the matter." In *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017), our Supreme Court explained the proper analysis when considering if a sentence is reasonable:

> [T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the "principle of proportionality" set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), "which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender."

"[S]entencing decisions are reviewed for an abuse of discretion by determining whether they violated the principle of proportionality." *Posey*, 512 Mich at 325. Similarly, when the trial court's authority to impose a consecutive sentence derives from statute, the trial court's decision is reviewed for an abuse of discretion. *People v Baskerville*, 333 Mich App 276, 290; 963 NW2d 620 (2020). To allow for meaningful appellate review, the trial court is required to state on the record its reasoning for each consecutive sentence it imposes. *Id*. Put another way, the trial court must specify "particularized reasons" for its imposition of a consecutive sentence. *Id*. (quotation marks and citation omitted).

Under MCL 750.520b(3), the trial court is authorized to impose a consecutive sentence for defendant's conviction of CSC-I. Specifically, the statute provides,

> The court may order a term of imprisonment imposed under this section to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction.

In *People v Norfleet*, 317 Mich App 649, 665; 897 NW2d 195 (2016), this Court recognized that the imposition of one consecutive sentence may be justified "in an extraordinary case," but trial courts are nonetheless required to specify on the record their rationale for the imposition of each consecutive sentence to allow for meaningful appellate review. This is because in Michigan, concurrent sentencing is standard, and our courts consider the imposition of a consecutive sentence " 'strong medicine.' " *Id*. at 665, quoting *People v Chambers*, 430 Mich 217, 229, 231; 421 NW2d 903 (1988). The purpose underlying consecutive sentencing is to discourage individuals from committing multiple crimes by removing the safety of concurrent sentencing. *People v Ryan*, 295 Mich App 388, 408; 819 NW2d 55 (2012). The trial court is obligated to identify "particularized reasons," referring to the specific offenses and the defendant, for imposing a sentence under MCL 750.520b(3) consecutively to another sentence. *Norfleet*, 317 Mich App at 666.

In this case, the trial court observed when sentencing defendant that he was self-employed as a mechanic and was considered a second father to many of the young girls whom he sexually abused. The trial court also observed that S.B.'s and A.B's mother had given a victim-impact

statement that defendant was considered a member of her family as well as the families of some of the other young girls, and that these facts "make[] the crimes that he was convicted of even more devastating." The trial court further stated that it was "convinced" that defendant had engaged in the sexual activities with the young girls, namely sexual penetration with the two primary victims, and the trial court also stated that it believed that the criminal sexual conduct occurred. Accordingly, the trial court determined that the jury's decision "was consistent with the evidence that was presented at trial." The trial court characterized this case as one which involved "an extraordinary breach of trust." Defendant manipulated children, and particularly with J.W., the trial court observed, the children grow up and when they do, they tell the stories of sexual abuse, and the sexual abuse has deeply impacted them. As the trial court stated, "Those children are having deep psychological impacts, in my judgment, from what you did." The trial court also admonished defendant for acting on his need for "pedophilic pleasure," stating, in pertinent part:

It may have seemed like a momentary thing to you, for you to gain some level of pedophilic pleasure with these children, but that action has put those children, really, at some kind of risk, I think, for the rest of their lives. And you know that that kind of behavior not only is against the law, but is in no way healthy behavior for children of that age – children of any age. So you have not only put yourself in jeopardy, but you've put every one of those children in jeopardy.

\* \* \*

But regardless, you made the decision for personal pedophilic reasons to -- to not only put your own freedom in jeopardy, but to create a kind of prison for each of those people as well, and that's unacceptable. Society rightfully places a high cost on someone who will do something like that. Society also believes, and the Legislature has approved, that you need to be kept from the general population, when you engage in that kind of behavior.

Addressing consecutive sentencing, the trial court provided its reasoning for imposing consecutive sentences:

The question has been argued by the People and also by your attorney as to whether, with regards to Counts I and II, there should be a consecutive application. It's my belief based on the numerous victims we have here, based on the uncharged conduct, based on the information that I heard at trial, based on information that we have discussed here today, that a consecutive sentence between Count I and Count II is appropriate.

We conclude that the trial court did not abuse its discretion by imposing consecutive sentences. During sentencing, the trial court referred to the specific offenses and defendant, and set forth particularized reasons for its decision. *Id.* For example, the trial court noted that S.B. and I.Z. considered defendant to be "a second father," and to all of the complainants, he was close enough to be considered a member of the family. The trial court characterized this case as evidencing an "extraordinary breach of trust," in which defendant repeatedly manipulated very young children to satisfy his own sexual needs. Additionally, defendant's actions "deeply impacted" the complainants on an emotional and psychological level, which put them at risk for

the rest of their lives. The trial court, in a compelling metaphor, also described defendant's actions as placing each complainant in a prison for the rest of their lives because of the harm caused by the sexual abuse. Given the trial court's thorough and detailed reasoning with respect to the imposition of the consecutive sentences for Counts 1 and 2, defendant's claim that the trial court abused its discretion is unavailing.

We similarly conclude that the effective 50-year minimum term that defendant received for Counts 1 and 2 resulting from the consecutive sentencing was reasonable and proportionate and therefore did not constitute an abuse of discretion.[17] In *Ryan*, 295 Mich App at 401 n 8, this Court concluded that a minimum 50-year term that the defendant received because of consecutive sentences imposed under MCL 750.520b(3) was proportionate to the offenses and the offender, particularly given the "horrific" abuse that the complainant suffered with her father as her abuser. This Court in *Ryan*, 295 Mich App at 401 n 8 (citation omitted), further stated that under circumstances in which the defendant received consecutive sentences and the sentences did not exceed the maximum punishment allowed, " 'the aggregate of the sentences will not be disproportionate under *Milbourn*.' "[18] Therefore, because the aggregate of defendant's consecutive sentences here does not exceed the maximum punishment for CSC-I, defendant's contention that he received a disproportionate sentence likewise is not persuasive.[19]

## VIII. CONCLUSION

There were no errors warranting relief. Accordingly, we affirm.

/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Christopher P. Yates

---

[17] "[A] proportionality challenge to a given sentence must be based on the individual term imposed and not on the cumulative effect of multiple sentences." *Norfleet*, 317 Mich App at 663. "[T]he combined term is not itself subject to a proportionality review[.]" *Id*. at 664. Because defendant does not challenge the individual 25-year terms for Counts 1 and 2, respectively, his proportionality challenge is meritless for this reason alone.

[18] The maximum punishment for defendant's conviction of CSC-I "for a violation that is committed by an individual 17 years of age or older against an individual less than 13 years of age" is a term of life imprisonment. MCL 750.520b(2)(b).

[19] Regardless, the effective 50-year minimum sentence was reasonable and proportionate for the same reasons that the trial court did not abuse its discretion by imposing consecutive sentences for Counts 1 and 2.